**Gary Michael BARNETT, Appellant,**

v.

**The STATE of Texas.**

**No. PD–0397–05.**

Court of Criminal Appeals of Texas.

March 8, 2006.

**10.** *Id.,* at 756 n. 22.

William H. "Bill" Ray, Fort Worth, for appellant.

Sylvia Mandel, Asst. Crim. Dist. Atty., Fort Worth, Matthew Paul, State's Attorney, Austin, for state.

### *OPINION*

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

In this case we must decide whether a defendant forfeits his complaint on appeal that the trial court gave the jury a coercive oral "*Allen* charge"[1] if he failed to object to the court's earlier improper polling of the jury.[2] We hold that the failure to object to unauthorized polling of the jury does not forfeit the separate issue of the propriety of the trial judge's later oral statement to the two hold-out jurors that "we do have a problem with both of you" and his inquiry into whether those jurors

---

1. *Allen v. United States*, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

2. The State's two grounds for review are

1) Is an objection premised on article 37.05 of the Code of Criminal Procedure timely if a litigant does not object at the earliest time?

2) Did the appellant invite error in the polling of the jury by failing to timely object when the trial court twice improperly polled the jury by asking numerous jurors how they voted?

could change their votes. Thus, we affirm the court of appeals which held that the trial court abused its discretion by denying appellant's request for a mistrial after making comments "that *directly* influenced the jury's verdict." [3]

## I.

Appellant was charged with aggravated sexual assault and indecency with a child. After the close of evidence, the trial court instructed the jury on two counts of aggravated sexual assault and two counts of indecency with a child. The jury originally returned verdicts of "not guilty" on the two counts of aggravated sexual assault and verdicts of "guilty" on the two indecency counts. Appellant asked for the jury to be polled.

During the polling procedure, it soon became apparent that the jury was not unanimous on the two "not guilty" verdicts: "the jurors were split eleven-to-one in favor of not guilty on count one and eleven-to-one in favor of guilty on count two." [4] Both the trial judge and the defense attorney were flummoxed by this development which neither had ever experienced. The prosecutor properly suggested, "Continue to deliberate is all I know." Appellant's attorney requested a short recess "to form my objection or make some request to the Court[.]" He did not object before or after that short recess. Instead, the trial judge again polled the jury in open court, asking every juror what his verdict was on each of the four counts. Appellant's attorney did not object. The jurors were still split eleven-to-one for "not guilty" on count one and eleven-to-one for "guilty" on count two. Appellant's attorney did not object. Immediately thereafter, the trial judge said

All right. Got everybody.

Now, two of you are not unanimous with everybody else. And I'm going to ask the two of you, that being Mr. Jones and—

Mr. Etheridge, your verdict was not guilty on Count One and not guilty on Count Two. Mr. Jones, your verdict was guilty on Count One, and guilty on Count Two. The remaining jurors were not guilty on count One, but guilty on count Two, Three and Four.

So we don't have a problem with that. But *we do have a problem with both of you,* as far as Counts One and Two from Mr. Jones, and Count One and Two— I'm sorry—Count One for Mr. Jones and Counts One and Two for Mr. Etheridge.

Mr. Jones, if I sent you back in there to deliberate, do you think that—and y'all have been deliberating pretty much all afternoon and all morning—*do you think that you would be able to change your vote,* or do you think that you would still maintain your vote as it is? [emphasis added]

Juror Jones: I think—could be possible, yes.

Okay. Mr. Etheridge, what about you—

Juror Etheridge: It's possible.

—if I sent you back there, do you think you can continue to deliberate, or *do you feel that you just couldn't—there's nothing that anybody can say to make you change your mind?* [emphasis added]

Juror Etheridge: It's possible.

All right, all right. Let me tell you this, too—and I'm going to send you back to deliberate. We're going to deliberate for as long as we can. So let's go in the back, and if you have not reached a verdict by 5:00 o'clock, I'm going to call

---

**3.** *Barnett v. State,* 161 S.W.3d 128, 135 (Tex. App.-Fort Worth 2005) (emphasis in original).

**4.** *Id.* at 131.

you back out because I need to make some additional arrangements if we haven't gotten any—a verdict by that time. Okay?

All right. Go back in the back and deliberate. You're only deliberating on Two—One and Two basically.

Once the jury departed, the trial judge said

Here's how I see it. We can do one or two things. I'm going to let them deliberate, but I can also, under the law, in Count One and Count Two declare a mistrial if they have not reached a unanimous verdict. Everybody else is in agreement on Counts Three and Four. We don't have any problem with this, so . . .

At that point, appellant's attorney interrupted:

We are now—what I'm getting ready to say might not have been—you and I had some conversation how this has never happened in our lives, and quite frankly, it caught me by surprise. And I think if I had not asked for a poll, we wouldn't be having this conversation right now.

I would ask the Court—and I've conferenced with my client. I would ask the Court to enter judgment on Counts Three and Four as the—in light of the jury's verdict, and I would ask the Court to entertain—to declare a mistrial on Counts One and Two. The reasons, therefore, are kind of twofold. I mean obviously because the jury said they can't agree. The statute—and I certainly don't find any fault with the Court for doing what you did. I may have done exactly the same thing if I had been in your shoes.

Article 37.05 says that the Court can—when you're polling a jury, you can ask them if it's their verdict, and if they answer in the affirmative, then you go on; and if it's not, you send them back

in the jury room. And the Court's done that, and I certainly don't have any complaint about the Court even going over it with them in detail like you did here a second time.

But what has concerned me, just kind of by the way it's come out, is now we have two jurors who basically have opposite feelings in the way they voted on these two counts. . . .

It appears to me that those two jurors may compromise their verdict in order to achieve a liken [sic] result, and that concerns me. I'm not sure it will be unanimous.

And for those reasons, I would ask the Court to declare a mistrial to Counts One and Two. I have no objection [to] entering judgment on Count Three and Four.

The trial judge then asked for the State's position which was that the statute requires the jury to continue deliberating and that is what they were doing. The trial judge said that he would permit the jurors to continue their deliberations for the time being, and, if they could not reach a verdict that evening, he would reconsider granting a mistrial.

Twenty minutes after being sent back to deliberate, two separate notes were sent out announcing that Mr. Jones and Mr. Etheridge had each changed his verdict. Mr. Jones changed his verdict from "guilty" to "not guilty" on Count One, and Mr. Etheridge changed his verdict from "not guilty" on Count Two to "guilty." The trial judge announced, "So now that conforms with everybody."

Appellant's attorney reurged his motion for mistrial and stated that "it's a compromised verdict. It's 4:30 in the afternoon. These people would like to go home. And I see that as a compromised verdict as opposed to a full, independent verdict on their parts." The trial judge denied that motion "[b]ecause they're not going home.

We're going to continue on" with the punishment phase. The jury sentenced appellant to twenty years' imprisonment on count two and ten years' probation on counts three and four.

On appeal, appellant complained that the trial court "erroneously conversed with the jurors about their propensity to change their verdict" after the polling showed a nonunanimous verdict on counts one and two. The court of appeals first addressed the issue of preservation of error. After a lengthy analysis, it concluded that

> Here, the trial court questioned the two hold-out jurors about changing their votes and sent the jury back to the jury room to deliberate. Appellant then requested a mistrial. Allowing appellant to make his request when he did does not run afoul of the purpose for requiring a timely objection. The trial court was in no better position to grant a mistrial immediately after the improper questioning than it was immediately after the jury was sent back to deliberate, when appellant actually made his request.... Further, unlike an evidentiary objection that is best made before an answer is given, it is the asking of the question itself that creates the error when polling a jury. Therefore, we hold that appellant's request for a mistrial was sufficiently timely to preserve error.[5]

The court of appeals then addressed whether appellant's "requests for a mistrial were sufficient to give the trial court notice as to the nature of his complaint," and found that they were. On the merits of the issue, the court of appeals stated that "the trial court's actions in the present case had the purpose and effect of encouraging a verdict."[6] Based upon its review of the court's actions " 'in [their] context and under all circumstances,' " it concluded that "jury coercion is apparent from the trial court's final conversation with the two hold-out jurors."[7] It sustained appellant's point of error, reversed the judgment on count two and remanded that portion of the case for a new trial.[8]

## II.

The State asked this Court for review and explicitly stated that "[t]his petition is limited to the issue of preservation of error relating to the poll of the jury in this case."[9] It argues that, by failing to object to the trial court's earlier improper procedure and "by acquiescing in the repeated improper polling of the jury, Appellant invited the trial court to disregard the law."[10]

In essence, the State's position is that appellant forfeited his complaint concerning the purportedly coercive statements to the two hold-out jurors because he did not

5. *Id.* at 133.

6. *Id.*

7. *Id.* at 133–34 (quoting *Howard v. State,* 941 S.W.2d 102, 123 (Tex.Crim.App.1996)).

8. *Id.* at 136. One justice concurred in the result, stating that appellant had failed to object to the improper *"Allen* charge," which is a subspecies of jury charge error. She argued that appellant's request for a mistrial after the offending comments "did not clearly inform the trial court that he was complaining of the erroneous jury instruction." *Id.* at 136 (Dauphinot, J., concurring). She concluded, "In the context of the entire case against Appellant, the trial court's error in singling out the hold-out jurors and asking if they could change their votes caused appellant egregious harm[,]" because the jury assessed twenty years' imprisonment on the problematic count two verdict and only ten years' community supervision on counts three and four. *Id.* at 137.

9. State's Brief on the Merits at 4.

10. *Id.* at 6.

object to the improper polling procedure, which led to the jurors' disclosure of their specific verdicts, which led to the trial court's *sua sponte* statements. That is, once appellant let the trial judge start down the primrose path, he could not complain when the judge ran into a bramble thicket at the end of the lane. Having invited the initial stroll, appellant was estopped from complaining about any hidden demons that might lurk in the bushes along the way.

The State characterizes appellant's appellate complaint as "jury poll error" under article 37.05.[11] Its thesis is that

> The court of appeals chose to review Appellant's complaint as only directed at the last comment of the judge. Thus, the court of appeals ignored the two erroneous jury polls and analyzed the court's comment out of context. The State submits isolating this statement out of context is contrary to the usual review of a record to determine whether error occurred.[12]

It is undoubtedly true that, had the trial court followed the trial prosecutor's initial advice to retire the jury to deliberate further as soon as it was discovered that the jurors were not unanimous, the purportedly coercive "*Allen* charge"[13] would never have been given. We agree with the State that appellant forfeited any error in the jury polling process by failing to object when the trial court went beyond the scope of article 37.05 and asked how each juror voted—guilty or not guilty. But appellant did not complain about the jury polling procedure. His point of error on appeal was:

> The trial court erroneously conversed with the jurors about their propensity to change their verdict, during polling at the guilt innocence phase of the trial.[14]

The complaint was improperly "conversing" with two jurors about their willingness to change their verdict, and that conversation happened to occur during the polling of the jury. Thus, appellant did not forfeit the right to complain about the *content* of the trial court's later statements simply because he asked for the jury to be polled or because he failed to object once the trial court went beyond the proper scope of jury polling.

---

11. Tex.Code Crim. Proc. art. 37.05. That article reads

> The State or the defendant shall have the right to have the jury polled, which is done by calling separately the name of each juror and asking him if the verdict is his. If all, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answer in the negative, the jury shall retire again to consider its verdict.

12. State's Brief on the Merits at 7.

13. An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve. *Allen*, 164 U.S. at 501, 17 S.Ct. 154. While such a charge is permissible in both the federal system and Texas courts, trial courts must be careful to word it and administer it in a noncoercive manner. *Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (noting that a supplemental *Allen* charge must be considered " 'in its context and under all the circumstances' " to determine whether it improperly coerced the jury) (citation omitted); *Howard v. State*, 941 S.W.2d 102, 123–24 (Tex.Crim.App.1996) (although trial judge was aware of the numerical division when he gave supplemental *Allen* charge, he "did not directly address the minority jurors and did not shade the instruction with coercive nuance," thus, in context, charge was noncoercive):

14. Appellant's Brief on Appeal to the Court of Appeals at 3.

Our rules require, as a "prerequisite to presenting a complaint for appellate review," that the record show that "the complaint was made to the trial court by a timely request, objection, or .motion[.]"[15] Appellant's "complaint" on appeal is that the trial court erroneously inquired into whether the two hold-out jurors could change their verdicts. Thus, appellant was required to make a timely objection, request, or motion once that inquiry was made.

The court of appeals concluded that, once the words were spoken, appellant made a timely motion for mistrial.[16] And, as the court of appeals correctly held, if an objection and instruction to disregard would not have been sufficient to cure the error, then appellant was not required to undertake those steps first.[17] Here, appellant could not reasonably have foreseen that the trial court would tell the two hold-out jurors that "we do have a problem with both of you" and ask them if they would be able to change their vote. Thus, appellant was excused from objecting to the trial court's statement and requesting an instruction to disregard because that could not eliminate the harm that had already been done by the very uttering of the words.[18]

In sum, while we agree with the State that appellant failed to preserve any appellate issue concerning the trial court's polling procedure, appellant's motion for mistrial was sufficiently timely to preserve the complaint that he did make on appeal. Therefore, we affirm the judgment of the court of appeals.

KELLER, P.J., concurred in the result.

---

15. Tex.R.App. P. 33.1(a)(1); see, e.g., Lagrone v. State, 942 S.W.2d 602, 618 (Tex.Crim.App. 1997) ("An objection should be made as soon as the ground for objection becomes apparent.... If a defendant fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived").

16. Barnett, 161 S.W.3d at 133. Appellant's motion for mistrial was hardly a model of legal clarity. Nonetheless, the court of appeals concluded that it was sufficient to put the trial judge on notice of his complaint that, "just kind of by the way it's come out," the two hold-out jurors were likely to compromise their original verdicts.

17. 161 S.W.3d at 134–35 (citing Young in noting that a defendant who requests a mistrial without first requesting a curative instruction forfeits appellate review .of that class of .events that could have been cured; holding that an instruction .to disregard would not have cured the harm caused by the trial court's statements to the hold-out jurors); see Young v. State, 137 S.W.3d 65, 69 (Tex.Crim.. App.2004). As we noted in Young,

If an objectionable event occurs before a party could reasonably have foreseen it, the omission of objection will not prevent appellate review. The reasons are clear. It is not possible to make a timely objection to an unforeseeable occurrence, and an objection after an event occurs cannot fulfill the purpose of the objection, which is to prevent the occurrence of the event.

137 S.W.3d at 70.

18. As a part of its argument that appellant was required to object "at the first improper question," the State notes that "if Appellant had objected before the jury returned to deliberate, the trial court could have further instructed the panel so as to remove any alleged coercive effect from the court's unfortunate choice of words." State's Brief on the Merits at 13. This single sentence, however, does not address the court of appeals's lengthy analysis and numerous citations to both state and federal cases supporting its conclusion that, taken in context, "an instruction to disregard would not have cured the harm" caused by the trial court's indirect communication that it wanted the hold-out jurors to "change their votes." 161 S.W.3d at 135.