1143-15

ORIGINAL

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

NO. PD-143-15

RAMON PADILLA,
Appellant

v.

STATE OF TEXAS,
Appellee

FILED IN
COURT OF CRIMINAL APPEALS

OCT 29 2015

Abel Acosta, Clerk

ON REVIEW FROM THE EIGHTH DISTRICT COURT OF APPEALS,
EL PASO, TEXAS IN APPEAL NO. 08-12-00234-CR

PRO SE PETITION FOR DISCRETIONARY REVIEW

NO ORAL ARGUMENTS REQUESTED

RAMON PADILLA
APPELLANT PRO SE
TDCJ-ID # 1809857
SMITH UNIT
1313 CR 19
LAMESA, TX   79331

# JUDICIAL NOTICE

The Appellant wishes for this Court of Criminal Appeals to take Judicial Notice of the following, regarding the Reporter's Record.

Upon receiving the Reporter's Record from the El Paso District Clerk prepared by Court Reporter Mary Elizabeth Bonney, Appellant began an immediate review. Along with his recollection of testimony he heard and what the Reporter took, the Appellant has noticed several omissions or misreported/transcribed testimony, specifically of the complainant Laura Diaz-Padilla. An example of such omission/misreported/transcription was: Laura testified at trial during direct examination by prosecutors of specific places of business in which she and Appellant shopped at and/or made purchases, including K-Mart, a dollar store, Church's, and Dominos, while also giving a detailed list of items purchased. However, when reviewing the Reporter's Record, there is no such testimony from Laura. See 4RR 198-202. Laura was cross-examined about these shopping events by defense counsel. See 5 RR 50-51:55. Defense counsel would not have been able to cross-exam on such, if such was not mentioned during direct examination.

The Court Reporter used machine shorthand, as stated on Reporter's Records, but she also used audio recording equipment, witnessed by the Appellant with numerous tape cassettes.

While Appellant only had a limited period of time to review the Records, he is very concerned there are other instances of omissions or transcription. Another concern is if this was omitted, the effect it played on the jury during deliberations, especially on Count IV - Agg. Kidnapping charge, considering the jury asked for testimony.

Appellant believes the Reporter's Record put forth throughout this Appellate process is **NOT** the complete and accurate record of all the testimony and actions that took place during trial in this cause.

Appellant asserts that this incomplete record has hindered the ability of appellate counsel from potentially presenting all possible grounds for review, including sufficiency of the evidence.

Unless there is comparasions between the audio recordings and the written transcripts, this issue will not be settled and it will leave open the possibility that appellant was not afforded his Due Process Right to a proper appellate process.

# IDENTITY OF PARTIES, COUNSEL AND TRIAL JUDGES

APPELLANT:

RAMON PADILLA
TDCJ-ID # 1809857
Smith Unit
1313 CR 19
Lamesa, Texas   79331

APPELLATE COUNSEL:

M."MATEO" DEKOATZ
PO Box 1886
El Paso, Texas   79950

TRIAL COUNSEL:

SERGIO GONZALEZ
2116 Abril Drive
El Paso, Texas   79935

APPELLEE:

STATE OF TEXAS

APPELLATE COUNSEL:

JAIME ESPARZA
El Paso County District Attorney
500 E. San Antonio, RM. 201
El Paso, Texas   79901

TRIAL COUNSEL:

GAY PULNER
Asst. District Attorney
500 E. San Antonio. Rm. 201
El Paso, Texas   79901

TRIAL JUDGE:

HON. ANGIE JUAREZ BARILL
346th District Court
500 E. San Antonio, 7th Floor
El Paso, Texas   79901

# TABLE OF CONTENTS

IDENTITY OF PARTIES, COUNSEL, AND JUDGE........ i

TABLE OF CONTENTS.................................. ii

INDEX OF AUTHORITIES.............................. iii

STATEMENT REGARDING ORAL ARGUMENT............... 1

STATEMENT OF CASE................................. 2

STATEMENT OF PROCEDURAL HISTORY................. 3

GROUNDS FOR REVIEW............................... 4

ARGUMENT

NO. 1 DID THE APPELLANT RECEIVE INEFFECTIVE ASSISTANCE
OF TRIAL COUNSEL WHEN TRIAL COUNSEL OPENED THE DOOR TO
PREJUDICIAL AND IMPROPER EXTRANEOUS OFFENSE EVIDENCE
DURING GUILT AND INNOCENCE PHASE? ..................... 5

NO. 2 DID THE TRIAL COURT WHEN IT ISSUED AN ALLEN
CHARGE TO THE DEADLOCKED JURY COMMIT REVERSIBLE ERROR
BY FORCING JURY TO REACH A DECISION OF SOME KIND BEFORE
THE COULD LEAVE? ......................................... 8

PRAYER ........................................................ 11

APPENDIX

EIGHTH DISTRICT COURT OF APPEALS OPINION

# INDEX OF AUTHORITIES

Page

ALLEN v. UNITED STATES...................................... 8
     164 U.S. 492, 17 S.Ct. 154 (1896)

ARREVOLO v STATE........................................... 8,9
     489 S.W.2d 569 (Tex.Crim.App. 1973)

EX PARTE MENCHACA.......................................... 6
     854 S.W.2d 128 (Tex.Crim.App. 1993)

GARCIA v STATE............................................. 6
     308 S.W.3d 62 (Tex.App.-San Antonio 2009)

HOWARD v STATE............................................. 8,9
     941 S.W.2d 102 (Tex.Crim.App 1996)

MIRANDA v ARIZONA.......................................... 9
     384 U.S. 436, 86 S.Ct. 1602 (1966)

OROZCO v TEXAS............................................. 9
     394 U.S. 328, 89 S.Ct. 1095 (1969)

ROBERTSON v STATE.......................................... 6
     187 S.W.3d 475 (Tex.Crim.App. 2006)

WILLIAMS v STATE........................................... 6
     662 S.W.2d 344 (Tex.Crim.App. 1983)

## STATEMENT OF CASE

Appellant, Ramon Padilla, was charged by a four-count indictment for Aggravated Assault, Aggravated Assault Family Violence, Obstruction and Aggravated Kidnapping relating to a marital relationship and relevant matters.

A trial before a jury found the Appellant guilty of Obstruction and the Aggravated Kidnapping. The Judge assessed punishment at 20 and 30 years of confinement, respectively, after finding enhancements true.

## STATEMENT OF PROCEDURAL HISTORY

Appellant, after being convicted, filed a notice of appeal and appointed appellate counsel filed Appellant's brief on March 14, 2015. The State subsequently filed its opposing brief.

The Eighth District Court of Appeals, El Paso, Texas, on August 12, 2015 issued its opinion. The opinion written by Chief Justice McClure with a panel that included JJ. Rodriguez and J. Rivera (who did not participate) affirm the judgment of the trial court as modified to reflect trial court's finding that enhancement paragraph to be true.

# GROUNDS FOR REVIEW

1. DID THE APPELLANT RECEIVE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL OPENED THE DOOR TO PREJUDICIAL AND IMPROPER EXTRANUOUS OFFENSE EVIDENCE DURING GUILT AND INNOCENCE PHASE?

2. DID THE TRIAL COURT WHEN IT ISSUED AN ALLEN CHARGE TO THE DEADLOCKED JURY COMMIT REVERSIBLE ERROR BY FORCING JURY TO REACH A DECISION OF SOME KIND BEFORE THEY COULD LEAVE?

   DOES AN ACT OF COERCION BY THE COURT RENDER A JURY'S VERDICT INVOLUNTARY, MUCH AS AN ACT OF COERCION BY LAW ENFORCEMENT RENDERS A PLEA OR STATEMENT INVOLUNTARY AND INADMISSIBLE?

1. DID THE APPELLANT RECEIVE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN TRIAL COUNSEL OPENED THE DOOR TO PREJUDICIAL AND IMPROPER EXTRANEOUS OFFENSE EVIDENCE DURING GUILT AND INNOCENCE PHASE?

The victim, Laura Diaz-Padilla (Diaz), testified that problems arose in the marriage because Appellant refused to get a job and he became because she nagged him about it. As a result of these problems, the both allegedly wanted to break up.

Trial counsel during cross-examination of Diaz pursued the theory that Diaz was angry and determined to have her revenge against Appellant for wanting to divorce Diaz.

As evidence of that theory trial counsel asked Diaz about the relationship before they separated. The following exchange occurred:

Counsel: And you stated it was pretty much nagging both ways when you broke up?

Diaz: Right. Yes, sir.

Counsel: And other than that, was there any other reason besides that you stated?

Diaz: No.

Counsel: Okay. No violence before that?

Diaz: Yes, there was.

(5 R.R. 5)

Trial counsel, who knew the issue of domestic violence or family violence is very emotional. However, the record indicates by trial counsel's own comments he did not research the topic of extraneous evidence and avoid opening the door. See % R.R. 91-95.

The State later on re-direct questioned Diaz regarding the extraneous offenses. Trial cousnel objected but the court ruled that trial counsel opened the door. The State then began to elicit extraneous offense evidence testimony from Diaz. 5 R.R. 98-101.

Trial counsel repeatedly opened the door to evidence that established violent behavior from Appellant towards Diaz. Given the inherently

prejudicial nature of extraneous offense evidence, the fact that this character of evidence would not have been otherwise admissible by the State during guilt/innocence, and the fact that the jury would later be invited to consider Appellant's foregone opportunity to controvert the allegations, it is clear that trial counsel acted in a deficient manner.

Appellant's entire case rested on casting doubt upon the credibility of Diaz. By opening the door, trial counsel allowed Diaz to testify about other acts of violence in the relationship, whether true or not. There could have been no reasonable trial strategy for trial counsel to elicit and open the door to the extraneous offense evidence and alleged instances of "bad acts", especially considering the fact that Appelllant did not take the stand.

this Court held that defense counsel rendered deficient performance by intentionally eliciting and opening the door to otherwise inadmissible and clearly prejudicial evidence. See **ROBERTSON v STATE,** 187 S.W.3d 475,484-86 (Tex.Crim.App. 2006); **GRACIA v STATE,** 308 S.W.3d 62,67-69 (Tex. App.-San Antonio 2009, no. pet).

In **EX PARTE MENCHACA,** 854 S.W.2d128,132-33 (Tex.Crim.App. 1993), this Court held that where defense turned on defendant's credibility there could be no strategic basis for allowing jury to hear defendant had prior convictions for same offense for which he was being tried and concluding counsel rendered ineffective assistance.

Any extraneous offense evidence is inherently prejudicial, especially assualtive behavior against family members. See **WILLIAMS v STATE,** 662 S.W.2d 344,346(Tex.Crim.App. 1983).

However, the appellate court failed to follow this Court's opinions and held that trial counsel was not ineffective. Such a

conclusion is contrary to established precedent of the Supreme Court of the United States and this Court of Criminal Appeals, as presented herein. Such a ruling by the appellate court warrants the Court of Criminal Appeals to assert its judicial and supervisory powers to correct appellate court's ruling, by finding that trial counsel was ineffective for intentionally opening the door to extraneous offense evidence that was prejudicial and improper during guilt and innocence phase of the trial.

2. DID THE TRIAL COURT WHEN IT ISSUED AN ALLEN CHARGE TO THE DEADLOCKED JURY COMMIT REVERSIBLE ERROR BY FORCING JURY TO REACH A DECISION OF SOME KIND?

   DOES AN ACT OF COERCION BY THE COURT RENDER A JURY'S VERDICT INVOLUNTARY, MUCH AS AN ACT OF COERCION BY LAW ENFORCEMENT RENDERS A PLEA OR STATEMENT INVOLUNTARY AND INDAMISSIBLE?

After hearing the testimony and evidence presented by the parties, the jury deliberated for about 5 hours when it sent a note to the Court indicating the jury was at an impass. The jury was hung on Counts I and IV, had no verdict for County II and reached a verdict on Count III. ¢ RR 92-94. The Court gave a simple instruction to look at the evidence and testimony again.

The jury sent a second note much later that stated:

"Dear Judge, We have all agreed we are divided with no possibility of reaching an agreement (unanimous)."
6 RR 95.

An Allen Charge (6 RR 95) was requested, which the Court gave with a final order stating:

"With that, we will stand adjourned, **until you have reached a unanimous verdict**."
6 RR 95-97.

An Allen' Charge is unduly coercive and therefore improper only if it pressures jurors into reaching a particular verdict or improperly conveys the court's opinion of the case. **ARREVOLO v STATE**, 439 S.W.2d 569,571 (Tex.Crim.App. 1973). The primary inquiry is the coercive effect of such charge on juror deliberation in its context and under all circumstances. **HOWARD v STATE**, 941S.W.2d 102,123 (Tex.Crim.App. 1996).

The jury was unanimous and in complete agreement they could not reach a verdict, yet the Court essentially responded that the jury must agree or be forever adjourned.

---------

fn. 1: **ALLEN v UNITED STATES**, 164U.S. 492, 17 S.Ct. 154 (1896)

That instruction stands in marked contrast to the instruction in ALLEN. The statement that the court will adjourn until a unanimous verdict is reached implies that the failure to reach a unanimous verdict will either result in or constitute a perpetual adjuornment. For juror members that's very coercive, especially on ones who have young children and families.

Yet, as this Court stated in HOWARD, the primary inquiry is the is the coercive effect of such charge on juror deliberations. The only way a proper inquiry can take place is to ask the jurors, themselves. The Appellant submitted an affidavit from the jury foreperson, which provides an insight to how the ALLEN Charge was received. However, the appellate court refused to acknowledge juror affidavit because of not recognizing so-call hy-bred representation, even though the Texas Constitution provides for such. Nor would the appellate court recognized the affidavit because the Rules of Evidence prohibits such.

The coercive ALLEN Charge when given by the court is an act of coercion, as this Court ruled in ARREVOLO. If this still is true, Appellant wonders how any act or decision made after can be considered voluntary and admissible. The Supreme Court of the United States has deemed coerced confessions involuntary and inadmissible that required conviction to be overturned. See MIRANDA v ARIZONA, 384 U.S. 436, 86 S.Ct. 1602 (1966); OROZCO v TEXAS, 394 U.S. 328, 89 S.Ct. 1095 (1969) and many others. This Court has adopted the U.S. Supreme Courts rulings.

Thus it is reasonable to conclude that coercive statements to a jury, who acts on such coercion, is then involuntary and deemed inadmissible, warranting any conviction as result of ALLEN Charge to be overturned.

So the question begs, if the primary inquiry is the effect of the ALLEN Charge, which is coercive, on the jury; how can a person prove such if the courts will not acknowledge affidavits from juror members? This is an issue this Court of Criminal Appeals needs to consider and establish an even-biased review of ALLEN Charge and how such effect's juror deliberations; how appellants can support such claims if Rules of Evidence allows courts to ignore juro affidavits?

It should also be considered that if a defendant's statements or his plea is coerced, such is involuntary and inadmissible and conviction is overturned. Would not, a jury's verdict that is subject to a coercive charge be an involuntary verdict, thus be overturned? How is it an act of coercion by law enforcement violate constitutional rights, but an act of coercion by a court does not?

Appellant beleives this Court of Criminal Appeals should assert its authority and review such issue in which constitutional rights are involved where such will give guidence to the lower courts in Texas.

## PRAYER

**WHEREFORE**, the Appellant Ramon Padilla, prays this Honorable Court grants this petition for discretionary review, in the interest of justice.

Respectfully Submitted

DATED: 10/24/15

*Ramon Padilla*

Ramon Padilla
Appellant Pro Se
TDCJ-ID # 1809857
Smith Unit
1313 CR 19
Lamesa, Texas  79331

## CERTIFICATE OF SERVICE

I, Ramon Padilla, declare under penalty of perjury, that the foregoing is true and correct, and further certify that a true and correct copy has been served upon:

Jaime Esparza, El Paso County District Attorney, 500 E. San Antonio, RM 201
    El PAso, Texas  79901; and

State Prosecuting Attorney, at his current address, Austin, Texas,

by placing in the Smith Unit/TDCJ Prison Legal Mail System on this the     day of October, 2015.

Ramon Padilla
Appellant Pro Se
TDCJ-ID # 1809857
Smith Unit
Dawson County, Texas

# APPENDIX



| | § | |
|---|---|---|
| RAMON PADILLA, | § | No. 08-12-00234-CR |
| Appellant, | § | Appeal from |
| | § | |
| v. | § | 346th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20110D02154) |
| | § | |

## OPINION

Ramon Padilla appeals his convictions of obstruction (Count III) and aggravated kidnapping (Count IV), enhanced with a prior felony conviction. Following the jury's finding of guilt on Counts III and IV, the court impliedly found the enhancement paragraph true and assessed Appellant's punishment at imprisonment for a term of twenty years on Count III and a term of thirty years on Count IV. We modify the judgment to reflect a finding of true to the enhancement paragraph and affirm the judgment as so modified.

## FACTUAL SUMMARY

Laura Diaz-Padilla and Appellant married in 2010 and separated in February of 2011. Appellant moved out of Laura's house and she continued to live there with her sons who were 8, 16, and 18 years of age. Laura continued to see Appellant occasionally after they separated and he spent the night with her a couple of times.

On the evening of March 4, 2011, Appellant went to Laura's house with his clothes and announced that he was moving back into the house with her. He also told her that he would take her out to the movies that night. Laura already had plans to go out with a friend, Eva, but she agreed to go to the movies with Appellant. Laura sent a text message to Eva to cancel their plans. Appellant was extremely jealous and generally did not allow Laura to communicate with her friends. When Eva replied to Laura's text, Appellant became angry because he believed Eva was "covering up" for Laura. Appellant told Laura she needed to change her telephone number and he left the house. Laura changed her telephone number as Appellant requested.

Later that same evening, Laura called Appellant. She became upset when she realized Appellant was in a bar. Laura hung up and decided to go out with Eva anyway. They went to a bar and had drinks. Eva went home and Laura went to a second bar to meet another friend, Jessica. While waiting for Jessica, Laura started playing pool with a man. Appellant walked into the bar and saw Laura playing pool. He smiled at her and walked back out of the bar. A few minutes later, he walked back in and introduced himself to the man at the pool table and identified himself as Laura's husband. Appellant called Laura a whore and left the bar. Laura knew he was angry so she left a few minutes later. When she got out to the parking lot, she discovered that she could not get into her car because someone had broken all of the door handles. Appellant drove up and told her to "see if that guy can open up your door." Appellant then told her that he could fix her doors but he needed to get his tools from storage. Laura got into Appellant's truck and left with him.

Laura became frightened when Appellant turned in the opposite direction from the

-2-

storage unit. Appellant began pulling Laura's hair and punching her in the face while telling her he was going to take her into the desert and kill her. Laura dialed 911 on her cell phone but Appellant took it from her and threw it out the window.[1] Appellant continued to punch Laura's face and head. She attempted to calm Appellant by telling him she loved him and to just let her out of the car, but he said that if he let her go she would call the police. He also told her that he would kill her sons if she called the police. Appellant drove out to a deserted area and stopped. He got on top of Laura and began choking and punching her while Laura pleaded with him to stop and let her go. Appellant was concerned that Laura would not be able to explain her injuries but he finally agreed to take her back home. Appellant told her that she needed to walk straight to her bedroom and not talk to her boys so they would not see her injuries. While they were driving back, Appellant continued to question Laura about the man at the bar and he suddenly turned the truck around and returned to the deserted area while telling her that he did not kill her the first time but he was going to kill her now. Appellant held Laura by the hair and beat her with a thin metal bar while questioning her about the man at the bar. He dragged her by the hair out of the truck and began kicking and punching her. He also tried to stab her in the chest with the metal bar. Appellant finally stopped assaulting Laura when he saw some headlights approaching them. Fearful that Appellant would kill her if she tried to run, Laura got back into the truck. Appellant repeated his threats to kill Laura's sons if she called the police.

Appellant took Laura back to her house and they went to her bedroom. The two older boys were asleep in their rooms but Laura's youngest son and her two nephews were asleep in Laura's bed. Appellant suddenly became angry because he claimed he could smell marihuana

---

[1] The State introduced into evidence a recording of the 911 call received at 1:46 a.m. on March 5, 2011.

smoke coming from her oldest son's bedroom. Appellant went into Brian's room and woke him up to search his bedroom and car. Laura's son, Chris, woke up and walked over to Laura. Chris "freaked out" when he saw Laura's face.[2] Fearful for Brian, Laura went downstairs and heard him arguing with Appellant. Brian came back inside and called 911 after seeing Laura's face because it was evident she had been beaten. Laura lied to the boys and told them she had gotten into a bar fight. Appellant ordered Laura to get into his truck and leave with him. Laura did so in order to get Appellant away from her children.

Appellant drove Laura back to the bar and opened her car door so she could get her purse. He then drove her to the parking lot of an apartment complex where they stayed until dawn. Appellant's truck was almost out of gas, so they drove back to the bar and got into Laura's car. They later went to a motel and got a room. Appellant apologized to Laura for damaging her car and throwing away her phone, but he refused to let her go. He let her use a pay phone to call one of her sons to let him know she was okay. She did not tell Chris she needed help because Appellant was standing by her. They returned to the motel room and spent the night. The following day, they went to a different motel. Once again, Appellant let Laura use a pay phone and she called her sister. Laura lied to her sister that she had gotten into a bar fight and would be home that evening. They spent the night at the motel and Appellant let Laura return home the following day, but he expected her to meet him later. Laura continued to lie to her family about how she had been injured because she believed Appellant would carry out his threats. During the subsequent days, Appellant called Laura frequently to check up on her.

Appellant texted Laura and told her that he was in the hospital and having surgery to

---

[2] The State introduced several photographs depicting the injuries to Laura's face and body.

- 4 -

repair a cut on his finger. Laura went to the hospital to confirm he was there. Feeling safer because he was in the hospital, Laura spoke to her pastor about what had happened. After speaking with her pastor, Laura telephoned her sister to tell her the truth and she then filed a report with the Sheriff's Department.

An El Paso County grand jury returned an indictment against Appellant alleging he committed aggravated assault (Count I), assault family violence by strangulation (Count II), obstruction (Count III), and aggravated kidnapping (Count IV). The jury acquitted Appellant of Counts I and II but found him guilty of obstruction and aggravated kidnapping.

## JURY ARGUMENT

In his first issue, Appellant contends that the prosecutor made an improper jury argument by commenting on his failure to testify and the trial court erred by denying his motion for mistrial. The State initially responds that Appellant waived the complaint because he did not request a mistrial until after the jury had returned its verdicts.

In his opening statement, defense counsel asserted that the evidence would show that Appellant refused to reconcile with Laura and she fabricated the entire story to get revenge against him. Appellant cross-examined the State's witnesses but he did not present any witnesses during guilt-innocence. During closing argument, the prosecutor emphasized that Appellant had an absolute right to not testify and the jury could not hold that against him, but she also told the jury that Appellant had a right to present evidence if he chose to do so. Defense counsel focused his closing argument on Laura's credibility and the absence of physical evidence linking Appellant to her injuries. During rebuttal, the prosecutor made the following argument:

> There are links in the evidence between the weapon that he used, the shirt that's torn, and Laura with her injury in the middle of her chest and her neck. Defense counsel would have you believe that those injuries were from a bar fight.
>
> Well, sure, they could have been from a bar fight. And they could have been from her running into a wall, or skate boarding and falling down on her face, or a gajillion different things could have caused those injuries, yes. But was any evidence brought to you to suggest that that was --

The trial court sustained defense counsel's objection and instructed the jury to disregard the prosecutor's statement last statement about the evidence brought to the jury. Appellant did not request a mistrial until after the jury had returned its verdicts. The trial court denied the motion for mistrial.

To preserve error regarding improper jury argument, a defendant must (1) make a timely and specific objection; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is insufficient to remove the prejudice resulting from the argument. TEX.R.APP.P. 33.1(a); *Cruz v. State*, 225 S.W.3d 546, 548 (Tex.Crim.App. 2007). The motion for mistrial must be timely, that is, it must be made as soon as the grounds for the mistrial become apparent. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex.Crim.App. 2007).

The trial court sustained Appellant's objection and instructed the jury to disregard. Consequently, the only adverse ruling suffered by Appellant is the denial of his motion for mistrial. *See Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex.Crim.App. 2004). Appellant did not move for a mistrial when the grounds first became apparent, that is, when the trial court instructed the jury to disregard the prosecutor's argument. His motion for mistrial made after the jury had rendered its verdicts was untimely and failed to preserve his complaint for our review.

*See Griggs*, 213 S.W.3d at 927 (motion for mistrial related to witness's testimony was untimely where it was not made until after the witness had finished testifying). Issue One is overruled.

## INEFFECTIVE ASSISTANCE

In Issue Two, Appellant argues that his trial attorney rendered ineffective assistance of counsel by "opening the door" to extraneous offense evidence and by failing to offer any witnesses or evidence during the punishment phase. Appellant filed a motion for new trial but it did not address his ineffective assistance of counsel claim.

### *Standard of Review*

To prevail on a claim of ineffective assistance of counsel, Appellant must show that: (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance prejudiced his defense. *See Smith v. State*, 286 S.W.3d 333, 340 (Tex.Crim.App. 2009), *citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the first prong, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Namely, Appellant must prove that his attorney's conduct fell below the professional standard. *Perez*, 310 S.W.3d at 893; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson*

-7-

*v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998). If the two-pronged test is not satisfied the ineffective assistance of counsel claim is defeated. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

On review, we presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001), *citing Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813. In most cases, this task is very difficult because the record on direct appeal is undeveloped and cannot reflect the failings of trial counsel. *Id.* at 813-14. When the record is silent and does not provide an explanation for the attorney's conduct, as in the instant case, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation to find ineffective assistance when the record is silent as to an attorney's strategy at trial. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000). Accordingly, when the record does not contain evidence of the reasoning behind trial counsel's actions, trial counsel's performance cannot be found to be deficient. *Rylander*, 101 S.W.3d at 110-11; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).

*Extraneous Offense Evidence*

Appellant first argues that defense counsel was ineffective because he opened the door to admission of the evidence that he punched Laura in the face a few weeks before they separated. The State replies that the extraneous offense evidence was also admitted to rebut Appellant's defensive theory that the complainant had fabricated her allegations against Appellant because he

- 8 -

refused to reconcile with her.

Defense counsel informed the jury during his opening statement that Laura had "adamantly fought" against the divorce from Appellant, and when he filed for divorce, she became angry. He further argued that Laura was not terrified, she was angry and determined to have her revenge against him for wanting to divorce her.

The complainant testified that problems arose in the marriage because Appellant refused to get a job and he became unhappy because she nagged him about it. As a result of these problems, they both wanted to break up. During his cross-examination of Laura, defense counsel asked her about the relationship with Appellant before they separated. The following exchange occurred:

> [Defense counsel]: And you stated it was just pretty much nagging both ways when you broke up?
>
> [Complainant]: Right. Yes, sir.
>
> [Defense counsel]: And other than that, was there any other reason besides that you stated?
>
> [Complainant]: No.
>
> [Defense counsel]: Okay. No violence before that?
>
> [Complainant]: Yes, there was.

After the complainant's testimony concluded, the prosecutor informed the trial court that she intended to offer evidence of Appellant's prior acts of violence against Laura. The prosecutor relied on two specific theories for admission of this evidence: (1) to rebut Appellant's defensive theory that Laura had fabricated the story because she was angry at him for refusing to reconcile

with her; and (2) defense counsel opened the door by asking Laura if Appellant had previously been violent with her. The trial court admitted the evidence under both of these theories. Laura subsequently testified that Appellant had pulled her hair and punched her in the face a couple of weeks before they separated and he moved out of the house. This incident was part of the reason for the separation. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. TEX.R.EVID. 404(b). But it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or knowledge. *Id.* Rebuttal of a defensive theory is one of the "other purposes" for which extraneous offense evidence may be admitted under Rule 404(b). *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009); *Powell v. State*, 63 S.W.3d 435, 439-40 (Tex.Crim.App. 2001). This includes rebutting the defensive theory that the complainant fabricated the allegations against the defendant. *See Bass v. State*, 270 S.W.3d 557, 563 (Tex.Crim.App. 2008)(holding that extraneous-offense evidence is admissible to rebut a defensive theory of fabrication or "frame-up"). A defendant's opening statement may open the door to admission of extraneous offense evidence to rebut a defensive theory raised in the opening statement. *See Bass*, 270 S.W.3d at 563; *Coutta v. State*, 385 S.W.3d 641, 663 (Tex.App.--El Paso 2012, no pet.).

For Appellant to prove his attorney rendered deficient performance, he must show that trial counsel opened the door to admission of otherwise inadmissible evidence. The evidence in question was admitted under two distinct theories but Appellant's ineffective assistance of counsel claim is restricted to only one of those theories. By failing to show that the evidence was inadmissible under the alternate theory, Appellant has not carried his burden of establishing

- 10 -

that his attorney rendered deficient performance at trial.

*Failure to Present Evidence on Punishment*

Appellant next alleges that trial counsel was ineffective because he failed to call any punishment witnesses. Appellant did not raise the ineffective assistance of counsel claim in his motion for new trial. Thus, the record is silent regarding counsel's trial strategy and we must presume counsel provided Appellant with reasonably effective assistance of counsel during the punishment phase. The failure to call witnesses generally does not constitute ineffective assistance of counsel without a showing that the witnesses were available to testify and that their testimony would have benefitted the defendant. *Perez*, 310 S.W.3d at 894; *Cate v. State*, 124 S.W.3d 922, 927 (Tex.App.--Amarillo 2004, pet. ref'd), *citing Butler v. State*, 716 S.W.2d 48, 55 (Tex.Crim.App. 1986). During closing argument in the punishment phase, defense counsel stated that Appellant's family was present in the courtroom to support him, but "out of respect, they pretty much stayed away." The record does not reflect who was available to testify on punishment or that the testimony would have benefitted Appellant. On this record, we find that Appellant has failed to establish his ineffective assistance of counsel claim. *See Badillo v. State*, 255 S.W.3d 125, 130 (Tex.App.--San Antonio 2008, no pet.)(appellant failed to establish ineffective assistance based on allegation of failure to call witnesses where appellant failed to show that the witnesses were available to testify and their testimony would have benefitted him). Issue Two is overruled.

## COMMENT BY THE TRIAL COURT

In his third issue, Appellant asserts that the trial court erred by making a comment which

- 11 -

"incorrectly and coercively" instructed the deadlocked jury. After several hours of deliberations, the jury sent out a note indicating they had reached a verdict on Counts II and III but they were hung on Counts I and IV. The trial court sent the jury a note and instructed them to look at the evidence. The jury later sent out another note stating they were still deadlocked on Counts I and IV. Both the State and defense requested the court to submit a written *Allen* charge[3] to the jury. The trial court brought the jury into the courtroom and provided the jury with that instruction. The trial court also made the following comment: "With these additional instructions, you are requested to deliberate in an effort to arrive at a verdict that's acceptable to all members of the jury if you can do so without violence to your conscience. Do not violate your conscience, but continue to deliberate. With that, we will stand adjourned *until you have reached a unanimous verdict.*" [Emphasis added]. Appellant argues that the highlighted comment effectively instructed the jury "that [they] must agree or be forever adjourned." Appellant did not object to the comment and he did not request an instruction to disregard or a mistrial.

Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial. *Unkart v. State*, 400 S.W.3d 94, 98 (Tex.Crim.App. 2013). This is accomplished by making a timely and specific request, objection, or motion in the trial court and obtaining an adverse ruling from the trial court. TEX.R.APP.P. 33.1. The "traditional and preferred procedure" for preserving error is to (1) object when it is possible, (2) request an instruction to disregard if the prejudicial event has occurred, and (3) move for a mistrial if a party thinks an instruction to disregard was not sufficient. *Unkart*, 400 S.W.3d at 98-99, *quoting Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). In a case where a timely objection would not have

---

[3] *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

- 12 -

prevented the error and an instruction to disregard would not have cured the harm flowing from the error, a party may skip the first two steps and request a mistrial. *Unkart*, 400 S.W.3d at 99.

Appellant concedes that he did not object when the trial court made the comment in question. Citing *Young v. State*, 137 S.W.3d 65 (Tex.Crim.App. 2004) and *Barnett v. State*, 189 S.W.3d 272 (Tex.Crim.App. 2006), Appellant maintains he is excused from objecting because he could not have foreseen that the trial court would make the comment. In *Young*, the Court of Criminal Appeals addressed whether a defendant can preserve error by moving for a mistrial without first making an objection and requesting an instruction to disregard. *Young*, 137 S.W.3d at 67. The court observed that a party is not always required to follow the traditional sequence of objecting, requesting an instruction to disregard, and moving for a mistrial. *Id.*, 137 S.W.3d at 69. "The essential requirement is a timely, specific request that the trial court refuses." *Id.* The court held that the defendant, who did not first object and request an instruction to disregard, preserved error by moving for mistrial after the trial judge engaged a potential juror in conversation about her experiences as to truthfulness of children. *Id.* at 71-72.

In *Barnett*, the issue before the Court of Criminal Appeals was whether a defendant forfeits his complaint on appeal that the trial court gave the jury a coercive oral *Allen* charge if he failed to object to the court's earlier improper polling of the jury. *Barnett*, 189 S.W.3d at 273. The trial judge told the two jurors who were holding out that "we do have a problem with both of you" and asked whether they could change their votes. *Id.*, 189 S.W.3d at 274. After the trial judge sent the jury back to deliberate, defense counsel moved for a mistrial. *Id.*, 189 S.W.3d at 275. The Court of Criminal Appeals held that the defendant did not waive error by failing to

object to the improper polling. *Id.* at 278. Further, it concluded that the defendant was excused from objecting to the trial court's statement and requesting an instruction to disregard because that could not eliminate the harm that had already been done. *Id.* The court went on to affirm the court of appeals' decision which held that the trial court abused its discretion by denying the defendant's motion for a mistrial. *Id.* at 278.

We agree with Appellant that an objection is not required to preserve error in every instance of an improper comment by a trial court, but a party must preserve error by making a timely, specific request and the trial court must refuse that request. *See Young*, 137 S.W.3d at 69 (stating that "the essential requirement is a timely, specific request that the trial court refuses"). In both *Young* and *Barnett*, the defendant preserved error by moving for a mistrial. Appellant never brought the claimed error to the trial court's attention by any of the accepted methods of preserving error including by moving for a mistrial. Consequently, Appellant waived his complaint. Issue Three is overruled.

## MODIFICATION OF THE JUDGMENT

The State requests that we reform the judgments to reflect that the trial court implicitly found the enhancement paragraph true. Counts III and IV alleged that Appellant had been previously convicted of felony theft in cause number 20060D01320 in the 243rd District Court of El Paso County on December 22, 2009. The judgment for each of these counts reflects "N/A" in the section designated for the finding on the enhancement paragraph. The record, however, reflects that the trial court made an implicit finding of true. At the beginning of the punishment phase, Appellant's attorney stated that he would stipulate to the prior convictions. The parties

- 14 -

and the trial court engaged in a discussion whether the stipulation needed to be in writing and the prosecutor stated she would reduce the stipulation to writing during a break. The record does not include the written stipulation. The State subsequently introduced evidence of Appellant's prior convictions, including the one utilized in the enhancement paragraph of Counts III and IV, without objection. At the conclusion of the punishment phase, and after sentencing Appellant to serve twenty years, the trial judge explained that obstruction is a third-degree felony but the punishment range was enhanced by the prior felony conviction to a second-degree felony. We conclude that the trial court impliedly found the enhancement paragraph related to Counts III and IV to be true. Accordingly, we modify the judgment to reflect that the trial court found the enhancement paragraph to be true. *See Torres v. State*, 391 S.W.3d 179, 185 (Tex.App.-- Houston [1st Dist.] 2012, pet. ref'd)(modifying judgment to reflect that the defendant pleaded true and the trial court impliedly found each enhancement paragraph to be true). Having overruled all three of Appellant's points of error, we affirm the judgment of the trial court as so modified.

August 12, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

(Do Not Publish)

- 15 -

# AFFIDAVIT

STATE OF TEXAS         §
                              §

COUNTY OF EL PASO     ·    §

---

Before me, the undersigned authority, on this day personally appeared the undersigned Affiant, who swore on oath that the following facts are true:

"My name is Leticia Betancourt of El Paso, Texas. I am over the age of 18 and of sound mind. I have personal knowledge of the facts stated herein, and they are all true and correct.

I was the fore person in the case styled The State of Texas v. Ramon Padilla, Cause No. 20110D02154. I distinctly heard the prosecution in closing say the defense had put no evidence which, I thought we were not supposed to take into account. The other jurors heard this and commented that since the defense had put no evidence the defendant must be guilty

A second juror then stated the defendant looked evil and therefore he was guilty she did not take any evidence into consideration and had made up her mind that the defendant was guilty.

The judge on the third time she has checked in she gave us a speech and I felt that we were forced to come up with a decision. We decided to split the hung jury on the two counts. The juror discussed the need to get home as their basis for splitting the decision on the two counts that were hung. I voted this way not because it was my vote, but because I felt we might be sequestered. I had not seen nor spoken to my minor child, it was already late at night and the Judge would not let me call my sitter and daycare arrangements were until 6:00 p.m.

SIGNED on April __19__, 2012.

_Leticia Betancourt_
LETICIA BETANCOURT

SUBSCRIBED AND SWORN TO before me on April____, 2012.

_Crystal Duran_
Notary Public
State of T E X A S