# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-20-00104-CR
## NO. 03-20-00108-CR

---

**Allison Heathman, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NOS. C-1-CR-19-400810 & C-1-CR-17-213710
### THE HONORABLE JON N. WISSER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Allison Heathman guilty of the class A misdemeanor offenses of assault family violence, *see* Tex. Penal Code § 22.01(a)(1), (b), and interfering with an emergency call, *see id.* § 42.062(a), (c). In four issues, appellant complains about the admission of evidence and references to the complainant M.B. as a "victim." For the following reasons, we affirm the judgments of conviction.

## BACKGROUND[1]

In trial court cause number C-1-CR-17-213710, appellant was charged with the offense of assault family violence. The State's allegations included that on or about September 10, 2017, appellant caused bodily injury to M.B. by striking or hitting M.B. on the head. In trial court cause number C-1-CR-19-400810, appellant was charged with the offense of interfering with an emergency call. The State alleged that on or about September 10, 2017, appellant prevented or interfered with M.B.'s ability to place an emergency telephone call or to request assistance in an emergency.

The cases were consolidated for trial. The evidence at trial was that appellant and M.B. were living together and in a dating relationship on September 10, 2017; that M.B. had six of her dogs at their residence; that appellant was paying for her and M.B.'s living expenses including rent; that M.B. called 911 and then approximately one hour later attempted to call 911 again; that police officers arrived shortly after M.B.'s attempted 911 call; and that when the police officers arrived, M.B. had visible injuries to her face and a finger.

The State's witnesses at trial were the 911 call taker, one of the responding officers, M.B., and a counselor who testified as an expert in the areas of domestic violence and common experiences of victims. The officer testified about his investigation, including his observations at the scene and interactions with appellant and M.B. He observed that M.B. had a "swollen lip" with "blood on it," "some swelling to her eye," and "a cut on her finger that had blood as well." Concerning his interactions with appellant and M.B., the officer testified that he

---

[1] Because the parties are familiar with the facts of the cases, their procedural history, and the evidence adduced at trial, we provide only a general overview of the facts here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

found "several ambiguities that didn't seem to add up and that was from both sides," but that based on his investigation, he arrested appellant.

M.B. testified about her relationship with appellant, the incident, and a prior incident in August 2017 between M.B. and appellant. M.B. testified that her relationship with appellant was "[n]ot very good"; that she was planning to move out and "stay with a friend"; and that during the incident, appellant "grabbed [her] by the hair and then hit [her] in the face." She also testified that appellant punched her twice on the face and then grabbed her phone because she said that she "was going to call the police." M.B. further testified that after she got her phone back and appellant had left the house, she called 911, stayed at the house, and waited for the police to arrive. She explained that she "had [her] dogs there and [she] wasn't just going to leave them" because appellant had threatened her dogs. Appellant returned before the police arrived, and M.B. testified that at that point, she tried to call 911 again, but appellant hung up on the call. The 911 call taker immediately called back, and the police arrived shortly after that. The State's exhibits included recordings of the 911 calls, recordings from the in-car dash camera from the officer's patrol car, text messages between appellant and M.B., and a video recording of M.B. describing her injuries immediately after the prior incident in August 2017.

The defense theories were that appellant did not cause M.B.'s injuries, that they may have been self-inflicted, and that M.B. was not telling the truth about what happened. The defense witnesses were individuals who testified that they had never seen appellant be violent and appellant who testified about her relationship with M.B. and the incident. Appellant testified that she paid the rent and all living expenses when M.B. was living with her and that she had given money to M.B. to leave but that M.B. "had been threatening to get [her] thrown in jail on false charges if [she] evicted [M.B.]" Appellant denied the State's allegations against her and

3

testified that M.B. was violent with her on multiple occasions and "[a] couple of times" to M.B.'s dogs. The defense exhibits included text messages between appellant and M.B. and photographs of appellant with a black eye. Appellant testified that M.B. caused the black eye.

The jury found appellant guilty of both offenses. After hearing additional evidence, the trial court assessed punishment at confinement for 180 days and a fine of $4,000 for each offense, suspended imposition of the sentences, and placed appellant on community supervision for twelve months. Appellant filed motions for new trial, which the trial court overruled. This appeal followed.

## ANALYSIS

### Evidentiary Rulings

Appellant's first three issues complain about the trial court's admission of evidence: (i) M.B.'s testimony about threatening statements that appellant allegedly made to M.B., (ii) the officer's testimony about statements that M.B. allegedly made to him at the scene, and (iii) a video recording of M.B. concerning the August 2017 incident.

#### *Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). We may not reverse the trial court's decision unless it "falls outside the zone of reasonable disagreement." *Johnson v. State*,

490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). "An evidentiary ruling will be upheld if it was correct on any theory of law applicable to the case." *Henley*, 493 S.W.3d at 93 (citing *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009)).

*Appellant's Statements*

In her first issue, appellant argues that M.B.'s testimony about threatening statements that appellant allegedly made to M.B. should not have been admitted. M.B. testified that the reason she did not leave their residence after she called 911 was that she "didn't want to leave [her] dogs there" "because [appellant] threatened [the dogs] before." Appellant argues that this testimony should not have been admitted over her objection that it was unduly prejudicial and that "the prejudicial harm of the testimony outweighed the probative value as to the commission of the alleged crime."

Rule 403 of the Texas Rules of Evidence allows for the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of, among other things, "unfair prejudice." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). "The probative force of evidence refers to how strongly it serves to make the existence of a fact of consequence more or less probable." *Gonzalez*, 544 S.W.3d at 372; *accord Davis*, 329 S.W.3d at 806. "'Unfair prejudice' refers to a tendency to suggest decision on an improper basis, commonly, though not

5

necessarily, an emotional one." *Davis*, 329 S.W.3d at 806 (quoting *Casey v. State,* 215 S.W.3d 870, 880 (Tex. Crim. App. 2007)); *accord Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "All testimony and physical evidence are likely to be prejudicial to one party or the other." *Davis*, 329 S.W.3d at 806 (citing *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996)). "To violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). "[I]t is only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012) (citing *Davis*, 329 S.W.3d at 806); *see Johnson*, 490 S.W.3d at 911 ("Under Rule 403, the danger of unfair prejudice must *substantially* outweigh the probative value.").

When conducting a Rule 403 analysis, the trial court must balance:

> (1) the inherent probative force of the proffered item of evidence along with, (2) the proponent's need for that evidence against, (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gonzalez*, 544 S.W.3d at 372 (quoting *Gigliobianco*, 210 S.W.3d at 641–42). These factors may "blend together in practice." *Gigliobianco*, 210 S.W.3d at 642.

Appellant argues that the probative value of the complained-of testimony was to address "a very peripheral issue"—"to provide an explanation" for why M.B. decided "to stay at the residence"—and that the alleged threat to M.B.'s dogs "prejudicially portrayed the defendant as violent, and cruel toward animals," which "is a very difficult thing for jurors to

6

dispassionately evaluate." Appellant also argues that "the alleged threats do not support any inference of guilt as to the actual charges in this case."

The complained-of testimony, however, was probative of M.B.'s credibility, which was contested by the defense theory that M.B. fabricated what happened, and provided context as to the nature of the relationship between appellant and M.B. *See* Tex. Code Crim. Proc. art. 38.371 (generally allowing evidence regarding nature of relationship between actor and alleged victim in prosecutions of offenses committed against member of defendant's family or household or person in dating relationship with defendant); *Gonzalez v. State*, 541 S.W.3d 306, 312 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining that article 38.371 permits evidence of relationship between defendant and complainant and that trial court could have concluded that evidence of complaint associated with defendant's prior conviction for assault family violence was admissible to refute defensive theory that complainant "fabricated the assault or that no assault actually occurred"). The presentation of the complained-of testimony also was limited and brief.[2] In this context, the trial court reasonably could have determined that the testimony would not have a tendency to suggest a decision on an improper basis or to confuse or distract the jurors from the main issues. *See Gonzalez*, 544 S.W.3d at 372; *Gigliobianco*, 210 S.W.3d at 642. We conclude that the trial court did not abuse its discretion in admitting the complained-of testimony and overrule appellant's first issue.

---

[2] The trial court did not allow M.B. to testify about the specifics of appellant's alleged threats to the dogs. Outside the presence of the jury, M.B. testified that appellant "threatened [M.B.] before whenever she was angry and said she was going to throw the little ones over the balcony and then let the big ones out." The trial court instructed M.B. to "[j]ust say threatened to harm my dogs and leave it at that."

*M.B.'s Statements*

In her second issue, appellant argues that the trial court erred when it allowed the responding officer to testify about statements that M.B. allegedly made to him when he arrived at the residence.

The excited-utterance exception to the rule against hearsay allows the admission of an out-of-court "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Tex. R. Evid. 803(2). The decisive question "is not the specific type of emotion that the declarant is dominated by—anger, fear, happiness—but whether the declarant was still dominated by the emotion caused by the startling event when she spoke." *Coble v. State*, 330 S.W.3d 253, 294 (Tex. Crim. App. 2010). "The exception is based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005) (citing *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003)). For the excited-utterance exception to apply, (1) the exciting event must be startling enough to evoke a truly spontaneous reaction from the declarant, (2) the reaction to the startling event must be quick enough to avoid the possibility of fabrication, and (3) the resulting statement should be sufficiently related to the startling event to ensure the reliability and trustworthiness of that statement. *McCarty v. State*, 257 S.W.3d 238, 241 (Tex. Crim. App. 2008). Factors that the trial court may consider in determining whether the exception applies "include the length of time between the occurrence and the statement, the nature of the declarant, whether the statement was made in response to a question, and whether the statement is self-serving." *Apolinar*, 155 S.W.3d at 187.

When asked what M.B.'s demeanor was like when he first made contact with her and observed her injuries, the officer testified, "She was upset. Came across a little bit scared as well." He also testified that it appeared she had been crying. The State then asked the officer what M.B. told him, and defense counsel objected on the ground of hearsay. After considering the parties' arguments and the officer's testimony outside the presence of the jury, the trial court overruled the defense objection. The officer then testified about what M.B. told him when they first made contact:

> [M.B.] told me that she had been involved in a disturbance and that that disturbance had started inside in the living room. That the disturbance continued outside into the garage. She stated that she had had her finger bent backwards which caused her a complaint of pain. And when the disturbance went outside that the defendant took her keys and proceeded to leave the residence. She stated that she followed the defendant out to the defendant's car in order to retrieve her keys, and that she had reached in and sustained a cut on her finger during that portion which had caused her to bleed.

He also testified that M.B. told him that "she had been assaulted by the defendant," that "she had been punched in the face and had her hair grabbed," and that "her face hurt."

Appellant argues that the excited-utterance exception does not apply because the evidence showed that more than one hour had passed between the time of the incident and M.B.'s alleged statements to the officer and that there had been no continuation of violence after M.B. initially called 911. But the trial court could have credited the evidence that shortly before the officer arrived and spoke with M.B., she had called 911 again; appellant hung up on M.B.'s attempted call; and M.B. remained in pain from the visible injuries to her face, including a swollen lip and swelling on her eye, when she spoke with the officer. The trial court reasonably could have inferred from this evidence that M.B. was still dominated by fear and pain caused by the incident when she was speaking to the officer. *See Coble*, 330 S.W.3d at 294. Thus, we

9

conclude that the trial court did not abuse its discretion in allowing the officer to testify about what M.B. told him when he initially made contact with her at the residence and overrule appellant's second issue.[3]

*Video Recording of M.B.*

In her third issue, appellant argues that the trial court erred when it allowed the State to introduce a video recording of M.B. describing her injuries from the August 2017 incident because it violated Rule 403. *See* Tex. R. Evid. 403. At trial, the trial court admitted the video recording over appellant's objections, which included a Rule 403 objection. The video recording shows blood around M.B.'s nose, mouth, and hands and on her shirt and the floor and her recounting what had just happened. In addition to the video recording, the trial court admitted photographs after the August incident showing M.B.'s face with blood around her nose and mouth and her testimony that on August 5, 2017, appellant "punched [her] in the nose and busted [her] nose."

After the video recording was admitted and played, M.B. testified about what happened during the August incident:

> [Appellant] had initially got irritated with me when we [were] in the car coming back from a game and getting food. And then she slapped me in the face in the car and then when we got back to the house I sat on the stairs to eat my food to stay [a]way from her and she [went] upstairs. And then she came down the stairs

---

[3] The State also raised the present-sense-impression exception to the rule against hearsay as support for the admission of the officer's testimony about what M.B. told him. *See* Tex. R. Evid. 803(1) ("A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it."). Because we have concluded that the trial court did not abuse its discretion in admitting the complained-of testimony under the excited-utterance exception, we do not consider this additional basis for upholding the trial court's ruling. *See Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016) (explaining that evidentiary ruling will be upheld if it is correct on any theory of law applicable to case).

behind me and she kneed me in my back and then took my phones out of my hand. And then I was asking her to give it back to me. And then I turned around to look away from her and then she called me so I turned around and then she hit me in the face.

Appellant argues that "[t]he prejudicial [e]ffect substantially outweighed the probative value of the video, because the jurors had already observed two other forms of identical evidence (photographs, witness testimony) relevant to this issue." The video recording, however, was not identical to the photographs because it showed appellant's presence at the residence—appellant is seen on the video recording in the background—and the residence's condition—blood and food scattered on the floor. Further, the presentation of the video recording took up a short amount of time during trial, and the video recording was probative of M.B.'s credibility, which was contested by the defense theory that M.B. fabricated what happened, and provided context as to the nature of the relationship between appellant and M.B. *See* Tex. Code Crim. Proc. art. 38.371; *Gonzalez*, 541 S.W.3d at 312. The trial court also instructed the jury in the charge that it could not consider evidence of extraneous acts for any purpose unless the jury found and believed beyond a reasonable doubt that appellant committed the acts and that if it did so find and believe, it could only consider the evidence "in determining the purpose for which it was introduced, namely, the nature of the relationship of the parties, and for no other purpose."

We conclude that the trial court did not abuse its discretion in overruling appellant's Rule 403 objection to the video recording. *See* Tex. R. Evid. 403; *Davis*, 329 S.W.3d at 806 (observing that all testimony and physical evidence are likely to be prejudicial to one party or other). We overrule appellant's third issue.

*References to M.B. as "Victim"*

In her fourth issue, appellant argues that she "suffered harmful prejudice" and that the trial court should have granted her motion for mistrial because counsel for the State and the testifying officer referred to M.B. as the "victim" in violation of appellant's motion in limine.

We review the trial court's denial of a mistrial for an abuse of discretion. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016); *Coble*, 330 S.W.3d at 292. We do not substitute our judgment for that of the trial court but decide whether the trial court's decision was arbitrary or unreasonable. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We must uphold the ruling if "it was within the zone of reasonable disagreement." *Coble*, 330 S.W.3d at 292; *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Because it is an "extreme remedy," a mistrial should be granted only when residual prejudice remains after less drastic alternatives have been explored. *Jenkins*, 493 S.W.3d at 612; *see Ocon*, 284 S.W.3d at 884–85 ("A mistrial is an appropriate remedy only in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004))); *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. App—Fort Worth 2005), *aff'd*, 189 S.W.3d 272 (Tex. Crim. App. 2006) (explaining that mistrial is extreme remedy for prejudicial events occurring during trial and that it "should be granted only when residual prejudice remains after objections are sustained and curative instructions given").

Here, the trial court sustained appellant's objections to the State and the officer referring to M.B. as the "victim" but denied appellant's motion for mistrial. Appellant objected to the officer's reference to "victim" when the State asked him who was the first person he made contact with at the residence. The officer testified that he "[did not] remember the exact order of the people that [he] spoke with, but [he] believed that [he] spoke with the victim first." Defense

12

counsel objected to this testimony on the ground that it violated appellant's motion in limine and asked for the reference to be stricken from the record. The State's counsel responded that she "had no problem with it being stricken from the record," and the trial court responded, "Okay, that's fine." Later during the officer's testimony, the State asked the officer, "What are [certain] photographs of?" The officer responded that the photographs were "of injuries to the victim." The State then asked, "And the complaining witness is [M.B.]?" The officer answered, "These are pictures of [M.B.]."[4] At that point appellant objected to the violation of the motion in limine and moved for a mistrial. The Court sustained the objection but denied the request for mistrial and asked the State "to try to be more careful." Appellant did not request an instruction to the jury to disregard this testimony.

Given the limited references to M.B. as the victim, the trial court reasonably could have concluded that sustaining appellant's objections was sufficient or that instructing the jury would have been sufficient. *See Jenkins*, 493 S.W.3d at 612; *Ocon*, 284 S.W.3d at 884–85; *see also Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004) (explaining that "the class of events that require a mistrial is smaller than that for which a sustained objection or an instruction to disregard will suffice"). Thus, we conclude that the trial court did not abuse its discretion in denying appellant's motion for mistrial and overrule her fourth issue.

## CONCLUSION

Having overruled appellant's issues, we affirm the judgments of conviction.

---

[4] After the trial court sustained appellant's initial objection, the State asked the officer, "After talking with the victim what was the next portion of your investigation?" Defense counsel did not object to this question, and the next reference to "victim" was in the officer's answer about the photographs as stated above.

13

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   February 10, 2022

Do Not Publish