**Affirmed and Memorandum Opinion filed January 14, 2020.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00972-CR

**MODESTO MAGDALENO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Cause No. 75484-CR**

## M E M O R A N D U M   O P I N I O N

Appellant Modesto Magdaleno challenges his conviction for aggravated sexual assault of a child on the ground that the trial court erred in denying his motion for mistrial. Because we conclude that the trial court did not abuse its discretion in denying his mistrial motion, we affirm the trial court's judgment.

## Background

Appellant does not challenge the sufficiency of the evidence to support his conviction. Thus, we briefly recite the facts pertinent to his issue. *See* Tex. R. App. P. 47.1.

A grand jury indicted appellant for aggravated sexual assault of a child. His case proceeded to a jury trial on guilt-innocence. Several hours after the jury began deliberations, the jury sent a note to the trial court stating that the jurors were unable to reach a unanimous decision. The trial court sent the following note to the jury:

> You must make an effort to keep working. I am to ask your Jury Steward to take you on a break and then we will continue until 4:30 at which time I will send you home to return tomorrow morning. Thank you for your hard work.

The jury was later sent home for the day having not reached a verdict.

The next morning, before deliberations began, the trial judge informed counsel for both sides that juror misconduct had been reported. The judge informed the parties that she had received a report that, after the exchange between the jury and the court about a non-unanimous verdict, one of the jurors searched the internet on her phone to determine what happens in the event of a non-unanimous jury and told the rest of the jurors what she found. The trial judge proposed to the parties that she question each juror individually to investigate the alleged misconduct. The parties did not object to this process.

The judge spoke to each juror individually in the courtroom. With one exception, the court placed each juror under oath.[1] She asked the jurors if anything had occurred during deliberations that concerned them or that should be reported to

---

[1] The record reflects that all the jurors except Juror No. 1 were sworn in before the judge questioned them.

the judge. Juror Nos. 1, 4, 5, 6, 7, 8, 10, and 11 denied that anything had occurred that concerned them or that should be reported to the court.

However, Juror No. 2 testified that during lunch one of the jurors took her cell phone out and looked up "hung jury." This juror read her search results aloud to the "group" and explained that a hung jury could result in a mistrial, charges being dropped, or other options. Juror No. 2 stated that one of the other jurors then told this juror that she was not "supposed to do that." According to Juror No. 2, this juror then set aside her cell phone and did not consult it again. Juror No. 2 stated that he had no concerns about his ability to continue as a juror, but he "had concerns that it may influence somebody to not consider changing a decision based on what the end result may be in the event of a hung jury."

Juror No. 3 initially reported that nothing that occurred in the jury room should be reported to the trial court. However, she acknowledged that she looked up "what happens if there's a hung jury because [she] was wondering." She stated she had forgotten the instructions of the trial court at that time. According to Juror No. 3, the jury "had asked the question and [she] didn't feel like [the jury] got a good answer and someone else had said, Well, my husband's a lawyer. This is what would happen." She explained that she read what she found to Juror No. 4. The trial court obtained Juror No. 3's permission to search her cell phone, and a photograph exhibit of the search she had performed was made part of the record. This exhibit shows a Google search explaining what happens in the event of a hung jury:

> If the jurors cannot agree on a verdict, a hung jury results, leading to a mistrial. The case is not decided, and it may be tried again at a later date before a new jury. Or the plaintiff or government may decide not to pursue the case further and there will be no subsequent trial.

Juror No. 3 stated that, when she read her search results aloud, most of the other jurors were talking and not paying attention. But one of the other jurors said, "I

3

don't think we're supposed to talk about that." According to Juror No. 3, she put her phone down and did not look up anything else. Juror No. 3 explained that she believed she could be a fair juror, but that making a decision would be extremely difficult for her.

Juror No. 9 testified that she overheard Juror No 3: "Somebody got their phone out and told us about — tried to look up the, I guess, the laws if we couldn't come to an agreement." Juror No. 9 explained that she did not think what Juror No. 3 did affected the jury's deliberations. She stated, "When I spoke up and I said, We can't do that. That's against the rules, it was literally put away, dropped and we didn't discuss if after that." Juror No. 9 said what occurred did not affect her ability to remain on the jury.

Finally, Juror No. 12 confirmed that another juror looked up what would happen if the jury was hung and that another juror had explained that jurors should not attempt to answer their questions by searching the internet. Juror No. 12 testified that she was "concerned" about what had happened because it "shouldn't have been done." However, she testified that this incident did not affect her ability to continue on the case; she stated the only juror it might have affected is the juror who looked up the information. Juror No. 12 also testified that she reminded the jurors that they had been instructed to listen to the witnesses' testimony and their decision was to be based on that, "not off anything else."

After questioning all the jurors, the trial judge proposed to the parties that Juror No. 3 be excused and replaced with the alternate juror. After a recess, the State argued that Juror No. 3 should be excused either for failing to follow the trial court's instructions or for her extreme emotional state. Appellant, on the other hand, moved for a mistrial based on Juror No. 3's conduct. The trial court denied appellant's motion for mistrial and granted the State's request to replace Juror No. 3, whom the

4

trial court found to be disqualified, with the alternate juror. Appellant did not object to excusing Juror No. 3 or seating the alternate juror.

The jury returned to deliberations and a few hours later found appellant "guilty" as charged in the indictment. After a hearing, the trial court sentenced appellant to forty years' confinement in the Texas Department of Criminal Justice, Institutional Division.[2]

This appeal timely followed.

## Analysis

In his sole appellate issue, appellant contends the trial court erred in denying his motion for mistrial because the jury "received extrinsic and prejudicial information regarding the possibility of the case being dismiss[ed] if no unanimous decision was made." Appellant asserts that Juror No. 3's internet search constituted an external influence and that the information she relayed to the other jurors was prejudicial to him.

A mistrial is a device used to halt trial proceedings when error occurring during trial is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009); *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A mistrial should be granted only when less drastic alternatives fail to cure the prejudice. *Id.* at 884-85. Requesting a less drastic remedy is not a prerequisite to a motion for mistrial, but "we will not reverse the court's judgment if the problem

---

[2] Appellant elected to have the trial court assess punishment.

could have been cured by the less drastic alternative." *Id.* at 885. The determination of whether an error necessitates a mistrial must be made by examining the facts of each case. *Ladd*, 3 S.W.3d at 567. We review the denial of a motion for mistrial for an abuse of discretion, and we must uphold a trial court's ruling if it is within the zone of reasonable disagreement. *Coble v. State,* 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

Citing *McQuarrie v. State*, 380 S.W.3d 145, 154 (Tex. Crim. App. 2012), appellant first asserts that Juror No. 3's internet search result for "hung jury," which she communicated to the jury, constitutes "an improper outside influence." In *McQuarrie*, the Court of Criminal Appeals held that "internet research conducted by a juror about the effects of date rape drugs constitutes an 'outside influence.'" *Id.* at 155. Juror No. 3 conducted internet research into what occurs when a jury cannot reach a verdict and conveyed that information to other jurors. We agree with appellant that Juror No. 3 introduced an "outside influence" to the jury. *See McQuarrie*, 380 S.W.3d at 151-53; *Ryser v. State*, 453 S.W.3d 17, 39 (Tex. App.— Houston [1st Dist.] 2014, pet. ref'd) (dictionary definitions obtained by juror and shared with other jurors were an outside influence); *see also McGee v. State*, No. 05-17-01445-CR, 2019 WL 2004059, at *1-3 (Tex. App.—Dallas May 7, 2019, no pet.) (mem. op., not designated for publication) (same).

Appellant next contends that the introduction of the outside influence into jury deliberations entitles him to a new trial under Texas Rule of Appellate Procedure 21.3(f). Under that rule, a defendant must be granted a new trial "when, after retiring to deliberate, the jury has received other evidence; when a juror has talked with anyone about the case; or when a juror became so intoxicated that his or her vote was probably influenced as a result." *See* Tex. R. App. P. 21.3(f). As courts have interpreted the rule, however, outside influences do not result in automatic reversals.

6

The Texas Court of Criminal Appeals has established a two-part test for determining whether a new trial is warranted under rule 21.3(f). *See Bustamante v. State*, 106 S.W.3d 738, 743 (Tex. Crim. App. 2003). First, the evidence must have been received by the jury. *Id.* Second, the evidence must be detrimental or adverse to the defendant. *Id.* "An 'outside influence' is problematic only if it has the effect of *improperly* affecting a juror's verdict in a particular manner—for or against a particular party." *Colyer v. State*, 428 S.W.3d 117, 129 (Tex. Crim. App. 2014). A trial court may not delve into jury deliberations; thus, its analysis of whether an outside influence was detrimental to the defendant must be objective and consider "if there is a reasonable possibility that it had a prejudicial effect on the 'hypothetical average juror.'" *McQuarrie*, 380 S.W.3d at 154. "To warrant a new trial based on juror misconduct, the movant must establish not only that jury misconduct occurred, but also that it was material and probably caused injury." *Ryser*, 453 S.W.3d at 39.

For rule 21.3(f) to apply, the jury must have received "other evidence" after retiring to deliberate. *See* Tex. R. App. P. 21.3(f). We will presume without deciding that Juror No. 3's internet search results regarding the legal consequences of a hung jury—as opposed to independent research of facts bearing on appellant's guilt or innocence—constitutes "other evidence" as contemplated by the rule. Notwithstanding that presumption, however, the record does not support the second prong of the *Bustamante* test: that the "other evidence" was materially detrimental to appellant. Appellant contends that Juror No. 3's conduct constituted a "coercive tactic" that can "only be interpreted to be prejudicial." However, no record evidence shows that Juror No. 3 attempted to coerce or otherwise influence other jurors,[3] and

---

[3] Juror No. 2 testified that he had subjective "concerns that it [the information] may influence somebody to not consider changing a decision based on what the end result may be in the event of a hung jury." Juror No. 9 testified, "It was just she [Juror No. 3] wanted to tell us what happened if that person — if she didn't change our mind or whatever." Contrary to

7

no juror reported that the search result she provided them impacted their deliberations. None of the jurors testified that Juror No. 3's internet search prompted any discussion during deliberations about the effects of not arriving at a unanimous decision. Further, the essence of the information conveyed to the jurors concerning what might happen if the jury remained deadlocked is the same information that the trial court properly could have conveyed to the jury through an *Allen* charge had the jury ultimately been unable to reach a unanimous verdict. "An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked. It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve." *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006). Here, the only information Juror No. 3 conveyed to the jury about a hung jury that is not contained within an *Allen* charge is that the prosecution could decide to forego a second trial in the event of a deadlocked or hung jury.

Appellant insists that "[t]he only reasonable interpretation of this information is 'change your vote to guilty or the charges may be dismissed.'" But appellant fails to explain how a juror inclined to vote "not guilty" would be influenced to change his or her vote to "guilty" based on information that a hung jury could result in charges being dismissed against him. Indeed, it seems just as likely, if not more so, that a juror inclined to vote "not guilty" would be encouraged to remain steadfast by the information. Simply put, on today's record, nothing indicates that the hypothetical average juror would be prejudicially influenced by the unbiased results of one juror's internet search conducted during deliberations regarding the possible legal outcomes resulting from a hung jury. *See, e.g.*, *Colyer*, 428 S.W.3d at 129

---

appellant's position, this testimony does not demonstrate that Juror No. 3 attempted to influence or coerce any jurors into changing their votes.

8

(explaining that courts use objective "reasonable person" test to determine whether there is a reasonable possibility that unauthorized information would have a prejudicial effect on a hypothetical average juror); *McQuarrie*, 380 S.W.3d at 154 (same); *Ryser*, 453 S.W.3d at 39 (jury misconduct must be material and have caused harm).

Given the above, we conclude that appellant has not demonstrated that the information Juror No. 3 located online and communicated to the jury was harmful. A reasonable view of the record supports the trial court's use of a less extreme remedy—replacing the juror accused of misconduct—than that of a mistrial. *See Ocon*, 284 S.W.3d at 884-86 (no abuse of discretion in denying mistrial where juror allegedly spoke negatively about the case during a phone call; case did not present "extreme circumstances" warranting a mistrial).

Under the present circumstances, appellant has not demonstrated that the trial court abused its discretion in denying his motion for mistrial. We overrule his sole issue.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
       Justice


Panel consists of Justices Jewell, Bourliot, and Zimmerer.
Do Not Publish — Tex. R. App. P. 47.2(b).