**Opinion filed November 3, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00153-CR

_____

## JOSHUA ROBERT BELLEVILLE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54224**

## M E M O R A N D U M   O P I N I O N

Appellant, Joshua Robert Belleville, was indicted for aggravated assault with a deadly weapon, a second-degree felony offense. *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b) (West Supp. 2022). The jury found Appellant guilty as charged in the indictment, and upon Appellant's election, the trial court assessed his punishment at seven years of imprisonment in the Institutional Division of the Texas Department of Criminal Justice (TDCJ-ID).

Appellant raises two issues on appeal. First, Appellant argues that he was harmed when the trial court refused to submit his requested jury instruction on self-defense. Second, Appellant asserts that the trial court erroneously assessed court-appointed attorney's fees against him because he is indigent. We modify and affirm.

I. *Factual Background*

On August 31, 2019, Edward Roman was playing a video game in his bedroom with his two-year-old daughter when he heard a knock at the bedroom door. Roman testified that Appellant—the live-in brother of Roman's girlfriend—was at the bedroom door asking Roman to transfer his clothes from the washer to the dryer in the laundry room, a small room adjacent to Roman's bedroom. Roman testified that, earlier that morning, Appellant had been acting strangely by "pacing back and forth in [Appellant's] room constantly and looking at [Roman]." Evidently, Roman and Appellant had a contentious relationship.

Roman testified that, as he moved clothing from the washer to the dryer, Appellant swung the laundry room door open and punched Roman twice in the back of the head. Appellant and Roman then began fighting in the laundry room. After Roman "threw [Appellant] across the hallway," Appellant "got up from the ground, . . . rushed [Roman] with the knife, and . . . stabbed [Roman]" under his jawline, severing his superior thyroid artery.

After Appellant stabbed him, Roman held Appellant's hands to prevent Appellant from stabbing him again. Appellant's father heard the commotion and ran to the laundry room, where Roman yelled, "he stabbed me in the neck." Appellant's father saw blood "gushing out of [Roman's] neck," removed Roman's daughter from the immediate area, and called 9-1-1. Appellant's father testified that only Roman was bleeding at this point in the altercation.

Roman testified that, after Appellant's father left with his daughter, Roman was able to move Appellant into the bedroom, still holding onto the blade-end of the

2

knife while Appellant held onto the handle. Roman testified that he got on top of Appellant and "was fighting for [his] life."

Appellant's father ran back to the altercation and found Roman on top of Appellant; the two were fighting over the knife in the bedroom—Roman still having the blade-end while Appellant had control of the knife's handle. During cross-examination, Appellant's father testified that "[i]t was obvious . . . who had control of the knife and who was trying to defend themselves from the knife blade," which, according to Appellant's father, indicated that Roman was trying to defend himself from Appellant's use of the knife. Appellant's father further testified that he was able to persuade Appellant and Roman to drop the knife; he then put the knife in the kitchen sink. Appellant's father described the knife as an "extremely sharp" knife and recalled that it had been missing from the butcher block for several days prior to the assault.

When Appellant's father returned to the bedroom, he found Roman attempting to strike Appellant with a 25-pound dumbbell. Roman testified that he hit Appellant with the dumbbell in the head three times. Roman dropped the dumbbell and Appellant's father broke up the altercation; he then ordered Appellant to leave the home, locked the front door as Appellant left, and began tending to Roman's injuries.

Both Roman and Appellant were treated at the hospital. Roman sustained stab wounds to his neck, inner right arm, and right hand, and a bite wound to his left index finger. Roman also suffered a severed superior thyroid artery, a perforated jugular vein, and a "hole in his trachea" that necessitated surgery. Appellant sustained lacerations to his face, scalp, and hands.

Appellant's trial counsel argued in his opening statement that Appellant "was attacked and . . . was simply defending himself." However, the evidence presented during the trial did not support Appellant's claim of self-defense. Rather, the evidence showed that Appellant's attack on Roman was premeditated. Roman and

3

Appellant's father testified regarding the knife missing from the butcher block, and Roman testified regarding Appellant's menacing behavior toward Roman on the day of the assault. Although Roman acknowledged that he was on deferred adjudication probation for having committed a prior aggravated assault against Appellant that involved the use of a bat, the evidence showed that, during the altercation in this case, Appellant lured Roman into a small laundry room to effectuate the stabbing and that Appellant used deadly force against Roman after Appellant had provoked and initiated the altercation.

After the evidence closed, Appellant's trial counsel requested the submission of a self-defense instruction in the trial court's charge, arguing that the testimony of Appellant's father was based on assumptions and that Roman's testimony was "self-interested." Appellant's trial counsel argued that "a scintilla of evidence" existed that justified the instruction "based on their history of [Roman] and [Appellant]." The trial court denied the request. During closing arguments, Appellant's trial counsel did not argue self-defense. Instead, trial counsel argued that (1) the officers "made a snap judgment" to charge Appellant because he was the larger-sized individual, (2) Roman and Appellant's father were not credible, and (3) the State had not met its burden to prove the elements of the charged offense.

The jury sent several questions to the trial court during its deliberations. One note related to police reports but was not signed. When the trial court returned the note to the jury for a signature, the jury members returned the same note with two additional questions relating to whether Appellant's motive for stabbing Roman "mattered," and why "we rest[ed] the case." With each note that was returned to the jury, the trial court directed the jury to the evidence admitted and the trial court's charge. The jurors sent three additional questions to the trial court, asking whether Appellant's trial counsel "object[ed] to resting the case," "what happens" if the jurors could not reach a unanimous verdict, and "how long" the jury must deliberate.

4

The trial court again directed the jurors to the charge for the first question but issued an *Allen* charge[1] for the latter two. The jurors then sent a final note to the trial court, asking who the second "he" was referring to in Appellant's medical records when the narrative said, "[p]t states 'he' got in a fight with his sister's boyfriend and that 'he' had a knife." The trial court directed the jury to comply with its instructions once more. Shortly thereafter, the jury reached a unanimous verdict and found Appellant guilty as charged in the indictment. The trial court sentenced Appellant to imprisonment for seven years in TDCJ-ID. This appeal followed.

## II. *Analysis*

In his first issue, Appellant asserts that the trial court erred in denying trial counsel's request for a self-defense instruction in the court's charge. Appellant argues that "the 'scintilla' of proof" to support the submission of this instruction exists within statements in Appellant's medical records. Specifically, in the emergency triage narrative, the records state the following: "Pt states he got in a fight with his sisters (sic) boyfriend and that he had a knife." In addition, in the history narrative, the records state: "Patient was involved in a stabbing episode [with] him and another. This patient has lacerations [on his] face[,] head[, and] bilateral hands." Appellant contends that the above statements, "as evidenced in the jury note inquiring as to who the 'he' was" in the narrative, constituted a "scintilla" of evidence that entitled Appellant to have a self-defense instruction included in the trial court's charge.

In asserting self-defense, the use of force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." PENAL § 9.31(a) (West

---

[1]*See Allen v. United States*, 164 U.S. 492 (1896); *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) ("An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked.").

2019). In the same manner, the use of deadly force against another is justified under the above circumstances "if the actor would be justified in using force against the other" under Section 9.31 and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force." *Id.* § 9.32(a). "'Deadly force' means force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). A reasonable belief is a belief that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42) (West 2021).

Self-defense is a "confession-and-avoidance" defense. *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Juarez v. State*, 308 S.W.3d 398, 404 (Tex. Crim. App. 2010)). A "confession-and-avoidance" defense does not negate any elements of the charged offense. *See Jordan*, 593 S.W.3d at 343; *Juarez*, 308 S.W.3d at 401–02; *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007). Instead, the defense requires that a defendant (1) admit to the commission of the charged offense and (2) offer a justification to his otherwise criminal conduct. *Jordan*, 593 S.W.3d at 343; *cf. Juarez*, 308 S.W.3d at 399.

Upon request, a trial court must include a self-defense instruction in its charge if such a defense "is raised by the evidence." *Jordan*, 593 S.W.3d at 343 (citing *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996)). A defense is "raised by the evidence" if "there is sufficient evidence to support a rational jury finding as to each element of the defense." *Jordan*, 593 S.W.3d at 343 (citing *Shaw*, 243 S.W.3d at 657–58). The "burden of showing that each element of the defense has been satisfied" rests with the defendant. *Juarez*, 308 S.W.3d at 404; *Shaw*, 243 S.W.3d at 657. "It is of no consequence 'whether such evidence or testimony was produced by the prosecution or the accused, or whether such defensive evidence or testimony might be strong, weak, unimpeached, or contradicted." *Juarez*, 308

6

S.W.3d at 405 (quoting *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984)); *see also Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007).

We "view the evidence in the light most favorable to the defendant's requested defensive instruction," using the court's "own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Jordan*, 593 S.W.3d at 343; *see also Maciel v. State*, 631 S.W.3d 720, 723 (Tex. Crim. App. 2021) (quoting *Shaw*, 243 S.W.3d at 658). The trial court errs in refusing to submit a requested defensive instruction if there is "some evidence," when viewed in the light most favorable to the defendant, that will support its elements. *Jordan*, 593 S.W.3d at 343 (citing *Gamino v. State*, 537 S.W.3d 507, 510 (Tex. Crim. App. 2017)). However, a finding that the trial court did not err in its refusal to submit a requested defensive instruction ends our analysis and precludes the need for any review of potential harm. *See Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012); *Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010) (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)).

In this case, Appellant's requested instruction would have concerned self-defense involving the use of *deadly force*, rather than non-deadly force, because Appellant used deadly force against Roman by stabbing him with a knife. The Texas Pattern Jury Charges describes such an instruction as follows: "You have heard evidence that, when the defendant [*insert specific conduct constituting offense*], he believed his use of force was necessary to defend himself against [*name*]'s use [or attempted use] of unlawful deadly force." Comm. on Pattern Jury Charges, State Bar of Texas, TEXAS PATTERN JURY CHARGES: CRIMINAL DEFENSES PJC 32.2 (2018) (Instruction—Self-Defense Involving Deadly Force to Protect against Deadly Force by Another). To be entitled to this defensive instruction, (1) Appellant was required to admit that he committed the aggravated assault against Roman and (2) the evidence at trial must have indicated that Appellant was justified in the use of force

under Section 9.31 and that Appellant *reasonably believed* that his use of deadly force was *immediately necessary* to defend himself against Roman's use or attempted use of unlawful deadly force. PENAL § 9.32(a); *see also Jordan*, 593 S.W.3d at 343. As such, Appellant would have been entitled to a self-defense instruction *only* if some evidence satisfied each element of both Sections 9.31 and 9.32.

Here, Appellant did not admit to committing the charged offense, nor did he produce evidence to support the elements of self-defense. First, the record is silent as to any admission by Appellant, overtly or otherwise, that he committed aggravated assault as charged in the indictment. The only evidence that could possibly be perceived as an "admission" is the ambiguous statement Appellant relies on in the admitted medical records that prove just the opposite—"[p]t states he got in a fight with his sisters (sic) boyfriend and that he had a knife." In addition, although Appellant's trial counsel initially argued in his opening statement that Appellant acted in self-defense, as the trial progressed and during his closing argument, Appellant's trial counsel instead presented and relied on other theories, some of which were arguably inconsistent with a self-defense theory. Thus, Appellant failed to admit to the charged offense, a crucial and necessary component of any "confession-and-avoidance" defense. *See Jordan*, 593 S.W.3d at 343; *see also Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999) (trial counsel's arguments that the defendant acted reasonably and that his actions were "necessary to save his life" did not "present the defense of necessity"); *cf. Lozano v. State*, 636 S.W.3d 25, 34 (Tex. Crim. App. 2021) ("[e]rroneous arguments of counsel about a defensive issue not raised by the evidence do not weigh in favor of finding egregious harm").

Nevertheless, the evidence is undisputed that Appellant initiated and provoked the assault upon Roman and that Appellant was the first person to use

8

deadly force during the altercation.  *See* PENAL § 9.32(a)(2) (deadly force must be immediately necessary); *see, e.g., Lozano*, 636 S.W.3d at 33 (self-defense is not raised by the evidence where the defendant provoked the altercation and did not otherwise meet the presumptions in Section 9.32(b)).  As stated above, Appellant (1) lured Roman into a small laundry room to effectuate the assault, (2) initiated the altercation by punching Roman in the back of the head, and (3) then used deadly force against Roman, by stabbing him in the neck with an "extremely sharp" knife, in response to Roman's attempt to defend himself by using non-deadly force.  Even if Roman's defensive actions with the dumbbell could be construed as a use of deadly force, Roman and Appellant's father both testified that Roman sustained the serious stabbing injury to his neck *before* Roman struck Appellant with the dumbbell.  Indeed, Appellant did not act in response to deadly force being used against him because Roman did nothing to place Appellant in fear of death.

Moreover, although the medical records state that Appellant "was involved in a stabbing episode" and, along with photographic evidence, that Appellant "ha[d] lacerations [on his] face[,] head[, and] bilateral hands," Appellant's father testified that, at the beginning of the altercation, only Roman was stabbed, only Roman was bleeding, and "[t]here was no blood coming from" Appellant at that time.  Without more, the ambiguous statements within Appellant's medical records—that "he got in a fight with his sisters (sic) boyfriend and that he had a knife" and that Appellant was "involved in a stabbing episode"—do not constitute sufficient evidence to support a rational jury finding that each element of a claim of self-defense has been met.  There is no evidence in the record that the term "he" refers to Roman.  Moreover, these statements do not indicate the timing of the knife's possession— before, during, or after Appellant's use of deadly force.  There is no evidence that Roman used deadly force against Appellant prior to being stabbed multiple times by Appellant with a knife.  As such, there is no evidence that Appellant believed his use

9

of deadly force was immediately necessary to defend himself against any purported use or attempted use of unlawful deadly force by Roman.

Viewing the evidence in the light most favorable to the requested instruction and considering the limits of rational inferences from the facts proven at trial, we conclude that there is insufficient evidence to support a rational jury finding as to each element of Appellant's claim of self-defense. The evidence in the record does not meet each element of the defense under Sections 9.31 and 9.32. Therefore, Appellant was not entitled to a self-defense instruction, and the trial court did not err when it refused Appellant's request. *See Jordan*, 593 S.W.3d at 343; *cf. Lozano*, 636 S.W.3d at 33; *Young*, 991 S.W.2d at 839.

We overrule Appellant's first issue on appeal.

### III. *Court-Appointed Attorney's Fees*

In his second issue on appeal, Appellant asserts, and the State agrees, that the trial court and the district clerk erroneously assessed court-appointed attorney's fees against him.

An indigent defendant cannot be taxed the cost of services rendered by his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Smith v. State*, 631 S.W.3d 484, 501 (Tex. App.—Eastland 2021, no pet.) (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2022). The Texas Court of Criminal Appeals has held that the trial court must find that the defendant had the ability to repay court-appointed attorney's fees prior to assessing such fees against an indigent defendant. *Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *see also Mayer*, 309 S.W.3d at 556 ("[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees."). Further, a "defendant who is determined by the

10

[trial] court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." *Cates*, 402 S.W.3d at 251 (quoting CRIM. PROC. art. 26.04(p)).

On September 3, 2019, Appellant filed an affidavit of indigence certifying that he did not have the necessary funds to hire an attorney for his defense for the instant case. The trial court determined that Appellant was indigent and appointed trial counsel to represent Appellant's interest in all proceedings in this case. Subsequent to this appointment, the trial court did not receive evidence, nor did it issue a finding, that Appellant had the ability to pay any portion of the attorney's fees that were incurred by his court-appointed attorney. Moreover, nothing in the record indicates that (1) Appellant is no longer indigent or (2) the trial court made a subsequent determination that Appellant's financial circumstances had materially changed or that he had the financial resources or ability to pay the court-appointed attorney's fees of $9,450 that were assessed against him. Because the trial court's judgment ordered Appellant to pay "all costs" and the district clerk improperly assessed the attorney's fees incurred by his court-appointed attorney as reimbursement costs against Appellant, we must modify the trial court's judgment and the district clerk's amended bill of costs to remove the improperly assessed fees. *See Cates*, 402 S.W.3d at 252; *Smith*, 631 S.W.3d at 501.

Here, the trial court's judgment erroneously orders Appellant to pay "all costs in this proceeding incurred . . . [including] all court costs, fines, fees, assessments and restitution." Similarly, the district clerk's amended bill of costs erroneously includes court-appointed attorney's fees as reimbursement costs for which Appellant is responsible. Accordingly, we modify (1) the trial court's judgment to clarify that "all court costs, fines, fees, assessments and restitution" does not include court-

appointed attorney's fees and (2) the district clerk's amended bill of costs to delete the court-appointed attorney's fees assessed against Appellant.

## IV.  *This Court's Ruling*

As modified, we affirm the judgment of the trial court.  *See* TEX. R. APP. P. 43.2(b).


W. STACY TROTTER

JUSTICE


November 3, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.