**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00014-CR**
_____

**TYLOR ALEXANDER CALVO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-05-06302**

**MEMORANDUM OPINION**

A jury convicted Tylor Alexander Calvo of Aggravated Sexual Assault of a Child, a first-degree felony, and sentenced him to fifteen years in the Texas Department of Criminal Justice. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). In five issues on appeal, Calvo challenges the trial court's judgment. Addressing Calvo's issues in the order in which they arose in the trial court, we hold the trial court did not abuse its discretion either when it denied Calvo's unsworn motion for continuance, or when it excluded the testimony of his father, Gene Calvo, who had

1

listened to another witness's testimony in violation of the Rule. The trial court's instructions and communications with the jury during deliberations did not taint Calvo's presumption of innocence or otherwise constitute fundamental error, and because Calvo did not object at trial, the issue was not preserved for our review. The trial court also did not abuse its discretion when it replaced a juror with an alternate during deliberations, because the record supports the trial court's finding that the juror was physically unable to continue. Lastly, we hold reversible error is not shown by the cumulation of these non-errors. Accordingly, we affirm.

## Issue Four - Motion for Continuance

In his fourth issue Calvo argues the trial court erred by denying his motion for continuance which he contends "resulted in representation by counsel who was not prepared." The State counters that Calvo, by filing an unsworn motion, failed to preserve the issue for appellate review, but even if the issue were preserved, the trial court did not abuse its discretion in denying the motion.

*Background*

Calvo's trial was scheduled to start December 4, 2023, and that morning, defense counsel filed a motion for continuance, asserting he had been unable to meet privately with Calvo because Calvo was in the Montgomery County Jail, having recently been arrested in Harris County for witness tampering. In the motion, defense

2

counsel also claimed he was unable to prepare for trial because the State had only recently produced evidence consisting of:

- November 17, 2023 – Police Report concerning harassment allegations against a prosecution witness.

- November 20, 2023 – 10 Body Cam Videos, Witness Interview Videos[.]

- November 28, 2023 – Emailed screenshots and pictures provided by witnesses.

- November 30, 2023 – Criminal History[.]

- December 1, 2023 – Witness statements and notes from the Complaining Witness on the case.

- December 3, 2023 at 7:58 PM – Witness statements and notes from a key prosecution witness from a meeting that was conducted on November 21, 2023.

The motion concludes, "This evidence, specifically the key witness interviews with key prosecution witnesses, has been made available to Defense only hours prior to jury selection, and with defense Counsel unable to confer with his client due to his incarceration." The motion is accompanied by a "Verification" in which defense counsel stated, "I am [the attorney for] the Defendant in this case. I have knowledge of the facts stated in the foregoing Motion for Continuance and they are true and correct." An unsigned and undated jurat appears below defense counsel's electronic signature.

At a pretrial hearing regarding the motion, defense counsel brought to the attention of the trial court that the motion was unsworn, at which point the following colloquy occurred:

[DEFENSE COUNSEL]: I haven't sworn to it yet; I'm waiting for all the clerks to get settled in.

THE COURT: Okay. Well, they're here.

[DEFENSE COUNSEL]: Can I swear to it now, Your Honor?

THE COURT: If that's your desire. The motion for continuance that I have in front of me is dated December 4th at 12:00 a.m. Is that what you're referring to?

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: Okay. Proceed with your motion.

[DEFENSE COUNSEL]: This is on the record?

THE COURT: Yes, sir, it is.

Without being sworn, defense counsel then argued he had been inundated with discovery from the State, including witness statements and notes from a "key prosecution witness," sent the night before, and this action by the State violated the trial court's discovery order and Texas Rule of Evidence 404(b). The State argued the information sent to defense counsel was not "supplemental extraneous" material but simply notes from their meeting with a witness in this case. Defense counsel stated he had been out of town on another case and had filed a motion for continuance the week before trial. Defense counsel also told the trial court Calvo

4

had been arrested three days before trial for harassing a witness, whom defense counsel believed would be a major witness in this case, and as such, defense counsel had not been able to privately confer with his client before trial. The State replied that it had previously informed defense counsel of the pending charges and that Calvo was likely to be arrested and transferred to the Harris County Jail. The State told the trial court it was "ready to go" to trial. The trial court denied the motion, but delayed voir dire to give defense counsel time to privately confer with Calvo.

The next day, after voir dire, defense counsel reurged the motion, and the trial court, after noting defense counsel was able to meet with his client privately for over an hour the day before, once again denied the motion, but then allowed defense counsel to call Calvo to testify regarding the motion. Calvo testified he was arrested for a bond violation on December 1, 2023, and did not have the opportunity to meet with defense counsel prior to the December 4 trial date. Calvo testified he felt he and his counsel needed "more time to discuss everything that was presented." After further argument from both sides, defense counsel once again reurged the motion, and the trial court announced, "The Court is denying your motion and actually not reconsidering the earlier ruling by the Court."

*Analysis*

"A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in

5

the motion." Tex. Code Crim. Proc. Ann. art. 29.03. "All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. The Texas Court of Criminal Appeals "ha[s] construed these statutes to require a sworn written motion to preserve appellate review from a trial judge's denial of a motion for a continuance." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). We find instructive two opinions from our sister courts in cases involving facts similar to those before us. The first is *Woodman v. State*, 491 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (internal citations omitted), where the court explained:

> Appellant's second motion for continuance was oral, rather than written, and it was not sworn. Accordingly, appellant did not preserve any complaint arising out of the denial of that motion.
>
> Appellant's first motion for continuance was written, but it was not properly sworn. There was no verification or affidavit attached to the motion. The nearest thing to a sworn statement was a single line above defense counsel's signature, which read: "Respectfully submitted and the above facts sworn to by as true based upon information and belief." This statement does not qualify as an oath. There was no jurat or declaration that counsel had made his averments under penalty of perjury. Because appellant's first motion was not properly sworn, we conclude that she failed to preserve her complaint for appellate review.

The second is *Cruz v. State*, 565 S.W.3d 379, 381 (Tex. App.—San Antonio 2018, no pet.) (internal citations omitted), where the court reasoned:

> Here, it is undisputed that although [Appellant] filed a written motion for continuance, that motion was not sworn. [Appellant], however, argues he has preserved his complaint for our review because he presented sworn testimony in support of the motion. [Appellant]

contends that by presenting sworn testimony in support of his motion, he satisfied the statutory requirement that the motion be sworn and it matters not that the motion itself was not sworn to in writing. We disagree.

Article 29.08 specifically states the motion must be sworn to. When interpreting this article, and article 29.03 which mandates the motion be in writing, the Texas Court of Criminal Appeals specifically held "a sworn written motion" is required for appellate preservation. [Appellant] has cited no authority, nor have we found any, that holds the mandate of article 29.08 is satisfied by the presentation of sworn testimony in support of the motion as opposed to an actual sworn motion.

We conclude defense counsel's unsworn, written motion did not preserve anything for appellate review, nor did his unsworn, oral statements at either of the hearings on the motion. *See Brumfield v. State*, 641 S.W.3d 568, 580 (Tex. App.—Tyler 2022, pet. ref'd) (unsworn motion failed to preserve error). Calvo's testimony at the second hearing, although sworn, was provided only after the trial court had already twice ruled that the motion was denied. After Calvo testified and the motion was urged a third time, the trial court indicated it was declining to reconsider its previous rulings. But even if the court had not yet ruled when Calvo testified, or if the trial court had renewed its ruling after he testified, the result would be the same. Although there is no prohibition against a trial court's consideration of oral testimony to elaborate on a statutorily compliant motion for continuance, allowing oral testimony to provide the factual basis for an oral or unsworn motion for continuance would be inconsistent with article 29.03's directive that "sufficient

7

cause" be "fully set forth in the motion[,]" and article 29.08's requirement that the motion "be sworn to by a person having personal knowledge of the facts relied on for the continuance." Tex. Code Crim. Proc. Ann. arts. 29.03, 29.08.

We conclude any assignment of error based on the trial court's denial of Calvo's motion for continuance has not been preserved for our review. We overrule Calvo's fourth issue.

### Issue Three - Exclusion of Gene Calvo's Testimony

In his third issue, Calvo complains that the trial court erred by excluding Gene Calvo's testimony during the guilt/innocence phase of trial. Calvo argues that "[t]he trial court violated [his] state and federal rights to call witnesses in his behalf, and his due process rights to a fair trial, by excluding Gene Calvo from testifying."

*Background*

After the State rested during the guilt/innocence phase of the trial, defense counsel attempted to call Calvo's father, Gene Calvo.[1] The State was permitted to take the witness on voir dire, during which he testified that he was present in the courtroom during the victim's trial testimony. Gene stated he was unaware of the Rule and did not know that he could not be in the courtroom when another witness was testifying. Still on voir dire, Gene testified that he did not know if his son and

---

[1]We refer to this witness by his first name because he and the appellant share the same last name.

the victim were having sex, and he did not know they were dating until his son "got in trouble" and was charged with family violence against the victim. After the 2016 family violence charge, Gene testified the victim was at his mother's home, and he asked who she was. The victim identified herself and indicated she was eighteen. Gene testified he did not like her because of the way she carried herself, and just a "gut feeling." Another time, the victim's mother dropped the victim off at Gene's mother's home, and he introduced himself to her mother. He denied having any other personal knowledge regarding the victim. Gene also testified to the same facts during a Bill of Exception. The trial court denied Gene's testimony under Texas Rule of Evidence 602 finding the witness did not have personal knowledge of the matter and Rule 401 as to relevance. *See* Tex. R. Evid. 602, 401. The trial court also found that Texas Rule of Evidence 614 had been violated and that the witness should be excluded from testifying. *See id*. 614.

On appeal, Calvo argues that defense counsel did not know Gene was in the courtroom and that it was an employee of the District Attorney's Office who invited him into the courtroom.

*Analysis*

Known as "the Rule," Texas Rule of Evidence 614 provides, "At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own." *Id*. The Texas Code of

Criminal Procedure mandates that "in no case where the witnesses are under rule shall they be allowed to hear any testimony in the case." Tex. Code Crim. Proc. Ann. art. 36.05.

A trial court considering disqualification of a defense witness who has allegedly violated the Rule must weigh both the interests of the State as well as the defendant's right to defend himself. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003). The Texas Court of Criminal Appeals has explained that "an accused has the right to call and have his witness testify, albeit that witness's credibility may be properly challenged due to his violation of the rule, subject only to the exercise of sound discretion by the trial court to exclude the testimony based upon the particular circumstances in the case." *Webb v. State*, 766 S.W.2d 236, 241 (Tex. Crim. App. 1989). Therefore, we review a trial court's decision to strike a defense witness for a violation of the Rule under an abuse-of-discretion standard of review. *See id*. at 244. "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391(Tex. Crim. App. 1990) (en banc) (op. on reh'g)).

In reviewing a trial court's decision to disqualify a witness, we apply the test outlined in *Webb*. If the Rule was violated and the witness was disqualified, we first

determine whether there were particular circumstances, other than the mere fact of the violation, that would tend to show the defendant or his counsel consented, procured, or otherwise had knowledge of the witness's violation, together with knowledge of the content of that witness's testimony. *Webb*, 766 S.W.2d at 244. If no particular circumstances existed to justify disqualification of the witness, we next consider whether the excluded testimony was "'extraordinary' in the sense that it was crucial to his defense." *Id*.

Where the "particular and extraordinary circumstances" show neither the defendant nor his counsel have consented, procured, connived or have knowledge of a witness or potential witness who is in violation of the sequestration rule, and the testimony of the witness is crucial to the defense, it is an abuse of discretion exercised by the trial court to disqualify the witness. *Id*.; *see also Braswell v. Wainwright*, 463 F.2d 1148, 1156 (5th Cir. 1972) (cited by *Webb*, 766 S.W.2d at 241-42). In summary, a trial court should not prevent a witness from testifying solely on the basis that he violated the Rule, but a trial court does not err by excluding a witness's testimony if it finds that the excluded testimony was not crucial to the defense. *See Routier*, 112 S.W.3d at 592 (citing *Holder v. U.S.*, 150 U.S. 91, 92, (1893)). We apply the *Webb* standard on a case-by-case basis. *Webb*, 766 S.W.2d at 244.

11

Even if a trial court errs in excluding a witness under Rule 614, "the error is non-constitutional and will be disregarded unless it affected the appellant's substantial rights." *See Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005) (citing Tex. R. App. P. 44.2(b)). "'A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

Here, the record does not indicate that the defense consented to, procured, or otherwise had knowledge of Gene's presence in the courtroom. *See Webb*, 766 S.W.2d at 245. Accordingly, we must determine whether Gene's testimony was crucial to Calvo's defense. *See id*. In the indictment, the State alleged that Calvo "intentionally or knowingly cause[d] [his] sexual organ to contact or penetrate the sexual organ of K.M., a child who was then and there younger than 14 years of age."[2] At trial, K.M. testified she and Calvo began having sex on his eighteenth birthday, when she was thirteen years old, after which they had sex "[c]ountless" times, "[a]lmost daily for two years." On cross-examination, K.M. testified:

---

[2]Like the indictment, we use initials to identify the victim. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

12

Q. Did your mother ever drive you over to Mr. Calvo's home?

A. I don't remember.

[. . .]

Q. Did your mother ever drive you to Mr. Calvo's home or drive you to Mr. Calvo's grandmother's home?

A. I don't remember. I mostly remember him picking me up.

Q. You mostly remember him picking you up. You don't remember if your mother ever drove you to Mr. Calvo's grandmother's house or to Mr. Calvo's house?

A. I don't remember.

[. . .]

Q. But you spent a lot of time at his grandmother's, correct?

A. Yes.

Q. Was Tylor [Calvo] always there when you spent time at his grandmother's?

A. Yes.

Q. Always?

A. Yes.

Q. And you've never went over there on your own -- I mean being dropped off by your mother?

A. No.

Calvo argues Gene's testimony was crucial to his defense because it would have contradicted and impeached K.M.'s testimony and would have corroborated Calvo's testimony, which was as follows:

13

Q. Did you ever see her mother drive her to your grandmother's house?

A. Yes.

[. . .]

Q. And why would they -- why would -- why would [K.M.'s] mother, why would she drop her off at your grandmother's house?

A. She had other plans.

[. . .]

Q. And did you find it odd that her own – that [K.M.]'s own mother would drop her – were you -- was she dropping her off after she had learned that you were supposedly having sex with her daughter?

A. Yes.

Q. And how many times did she drop her off after [K.M.] told her she was 14 years old when you had intercourse with her?

A. I mean multiple times, more than four, if not six.

[. . .]

Q. Did you find it odd that you being an accused pedophile, that the victim's mother would take her own child to your home?

A. She did not think I was a pedophile.

Q. That's why she would drop her off?

A. I was trusted.

During closing argument, Calvo's defense counsel argued:

He's allowed – this monster is allowed to go back into the home of the girl he supposedly sexually assaulted. He's allowed to go back there. What kind of a mother is going to do that? Well, maybe -- just based on that -- maybe she's a good mother. I wasn't there. Maybe she's a good mother and she just did it because she knows her daughter is an

14

attention-getter, or her daughter has a tendency to make false accusations, or her daughter has mental problems that we will never know about because she said she never sought any kind of help. Did she? I don't know; maybe she did. Doesn't make sense to me that somebody that is going through all of this horrible malanguish [sic], six years later is bringing charges, is still hounding this poor guy.

We reject Calvo's argument. Gene admitted he did not know if K.M. and Calvo ever had sex. And although the parties' relationship spanned many years, Gene's proffered testimony described only two instances in which he had personally observed K.M. and only one in which he had personal knowledge that she had been dropped off at the house by her mother. Because Gene never testified whether that one occasion was before or after K.M.'s mother learned that K.M. and Calvo were having sex, his testimony would not have corroborated that portion of Calvo's testimony upon which defense counsel relied in making the argument that K.M.'s own mother did not believe her. Because Gene's testimony was not highly probative of the question of Calvo's guilt, we cannot say that his testimony was extraordinary in the sense that it was crucial to Calvo's defense. *See Routier*, 112 S.W.3d at 591; *Webb*, 766 S.W.2d at 245; *Emenhiser v. State*, 196 S.W.3d 915, 924 (Tex. App.—Fort Worth 2006, pet. ref'd). We overrule Calvo's third issue.

**Issues One and Two –Trial Court's Instructions and Juror Replacement**

In his first and second issues, Calvo argues the trial court's instructions suggested that a hold-out juror was guilty of misconduct, thereby violating Calvo's presumption of innocence, and that the court erred in subsequently removing the

15

juror on the ground he was disabled from continuing deliberations. Although we address these issues separately, they share an overlapping background.

*Background*

After the jury retired to deliberate, the jury sent a note asking the trial court, "What is the process if the jury cannot reach a consensus?" The trial court then conferred with trial counsel and gave the jurors an *Allen* charge that stated the following:[3]

Members of the Jury:

If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time. Any such future jury will be empaneled in the same way this jury has been empaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.

With this additional instruction, you are requested to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience. Do not do violence to your conscience, but continue deliberating.

---

[3]"An *Allen* charge is a supplemental charge sometimes given to a jury that declares itself deadlocked." *See Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006). "It reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee a second jury would find the issues any easier to resolve." *Id*. (citing *Allen v. U.S.,* 164 U.S. 492, 501 (1896)).

16

Neither the State nor Calvo objected to the *Allen* charge.

The trial court then received a note from the jury which asked, "What constitutes juror misconduct? Can we have a record of the rules of being a juror?" The trial court responded, "Please refer to 'Written Instructions for Jurors in Criminal Case,' that you were given at the beginning of the trial. (Find attached)." Attached to the response was a copy of the referenced instructions. Neither the State nor Calvo objected. Those instructions included instructions that the jurors should turn off electrical devices, avoid excessive contact with the parties and attorneys, refrain from discussions about the case or investigations into the participants or the facts, and withhold special knowledge or experiences that may have an impact on deliberations. Instruction No. 8, read in part:

> It is your duty to listen to and consider the evidence and to determine fact issues that I may submit to you at the end of the trial. After you have heard all of the evidence, I will give you instructions to follow as you make your decisions. The instructions will have questions for you to answer. You will not be asked and you should not consider which side will win. Instead, you will need to answer specific questions I give you.
>
> Every Juror must obey these instructions. If you do not follow these instructions, you will be guilty of juror misconduct and it may be necessary to order a new trial and start this process over again. This would waste both your and the litigants' time, and would require the taxpayers of the county to pay for another trial.

The trial court received a third note which read, "Concern over suspected juror misconduct." The trial court then advised counsel for both sides that it intended to

bring the jury into the courtroom and read that portion of the court's instructions dealing with juror misconduct to draw attention to the instruction that the jurors "should tell" the court if anyone was not following the instructions. Both counsel agreed, and the court brought the jury in, acknowledged their third question, and instructed them:

> Ladies and gentlemen of the jury, I have formed a response, without objection from the parties, to this, which reads: "Members of the jury, per the Written Instructions for Jurors in Criminal Cases, if anyone does not follow these instructions, you should tell me. That's actually referred to on the back page under Section 8, where it describes 'if you do not follow these instructions, you will be guilty of juror misconduct and it may be necessary to order a new trial and start this process over again.'" It further reads:

> "Please keep these instructions and review them as we go through this case. If anyone does not follow these instructions, you should tell me."

> And that's directed to the Court; you should tell the Court. You've been given the written instructions in response to the second question that was submitted, and at the hour we are now, I would like to submit this back to you to return to the jury room; and I'm going to hand that to Deputy Dixon. And I would like you to take my response in consideration and inform the Court of any juror misconduct, and the Court will act accordingly from there. With that, you are excused to the jury room.

The trial court then dismissed the jury to continue deliberations with a written response which read, "Per the 'Written Instructions for Jurors in Criminal Case', 'If anyone does not follow these instructions you should tell me.'" Later, the trial court called the jury foreperson to come into the courtroom for questioning, without objection from the State or defense counsel. The following colloquy then occurred:

18

THE COURT: Madam Foreperson, if you would come up to the front, ma'am. We are on the record at this time, and I'm just inquiring with you as to the suspected juror misconduct.

THE FOREPERSON: The suspected push for a mistrial to prevent more evidence for the decision of the verdict.

THE COURT: Explain to me.

THE FOREPERSON: Also, he doesn't believe that the evidence is sufficient, and that he wants a mistrial so they can secure more evidence. And also told a fellow juror that's not fair that there's more women on the jury than men.

THE COURT: Okay. Okay.

THE FOREPERSON: Also during open court, made verbal objections that fellow jurors could hear besides him -- beside the juror.

THE COURT: Okay. So when you say – you're saying that one of your fellow jurors is advocating for a mistrial so more evidence could be obtained for the future trial?

THE FOREPERSON: Yes, Your Honor.

THE COURT: Okay. As not to --

THE FOREPERSON: Make a verdict.

THE COURT: -- not to make a verdict and not to base the verdict on the evidence that was presented in this trial?

THE FOREPERSON: Yes, Your Honor.

THE COURT: Okay. I'm just reading right now. Pardon me one second.

THE FOREPERSON: I have one more comment. He also said because he could not physically see, or there's no DNA, there's no possible way sexual intercourse happened.

THE COURT: So he said because he could not see the offense occur or there was not DNA, he could not --

THE FOREPERSON: Believe it.

THE COURT: -- believe it occurred?

THE FOREPERSON: Yes, Your Honor.

The trial court then asked the foreperson to return to the jury room and addressed counsel. Defense counsel moved for a mistrial. The trial court stated that while the conduct in question was "concerning," the trial court did not believe it rose to the level of juror misconduct. The trial court did not rule on the motion for mistrial and suggested proposing to the jurors that they adjourn for the night and return in the morning. The parties did not object, and a note was sent to the jury asking, "Would adjourning for the night and returning in the morning to continue deliberations, be helpful in resolving any deadlock?"

The trial court then received a note from the jury indicating, "The juror in non-agreement says they feel too physically unwell to continue in the trial." Calvo moved for a mistrial, but the court reminded the lawyers there was an alternate juror. The State requested to use the alternate juror if there were sufficient grounds to dismiss the regular juror. Calvo again moved for mistrial, which was denied, and the trial court indicated it would conduct a hearing to determine whether the juror in question had become disabled to qualify for dismissal and seat the alternate juror.

20

The juror was brought in and testified that he had an "esophagus problem," that he needed an endoscopy, and that he had "been with pain all the trial[.]" Asked to describe the pain on a scale of 1 to 10, the juror answered, "10. It's a stabbing pain in the back." He stated that he had not been able to eat because he could only ingest liquids due to his esophagus, and that his lack of nourishment was causing him to lose concentration and be fatigued. He previously believed he could handle the pain, but now it was too intense. He explained that during the trial, he was only making comments about the pain and was not expressing disagreement with the evidence being presented. He stated he "completely disagree[d]" with the allegations of juror misconduct.

Defense counsel suggested the court should release the jury for the night and wait until the following day to determine—based on how the juror was doing after taking in nourishment—whether it was necessary to replace the juror with the alternate. The trial court found that the juror was disqualified due to physical illness, and the alternate juror was substituted in the juror's place. Shortly thereafter, the jury returned its verdict finding Calvo guilty of Aggravated Sexual Assault of a Child. The following day, the jury sentenced Calvo to fifteen years' incarceration.

### Issue One – Trial Court's Instructions

Calvo contends the trial court's instructions violated his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution. He argues the

21

court's instruction number 8, regarding misconduct, "when coupled with the *Allen* charge, suggests that if the jury cannot 'answer specific questions' then the jury, or a juror, is 'guilty of juror misconduct…[.]'" He further argues the jurors "were led to believe that the one juror who believed there was insufficient evidence was 'guilty of juror misconduct' because of comments by the trial court." Citing *Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000), Calvo argues he was not required to object at trial, because the trial court's comments tainted the presumption of innocence in the eyes of the jury, constituting fundamental error. We disagree.

*Analysis*

"Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial." *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). In *Blue*, the trial judge apologized to the panel members about a long delay before starting the trial and explained that the delay had been caused by the defendant's indecision about whether to accept a plea agreement or go to trial. *Blue*, 41 S.W.3d at 130. The trial court commented, "Frankly, obviously, I prefer the defendant to plead because it gives us more time to get things done." *Id*. The defendant did not object, but on appeal, argued the trial judge's comments were fundamental error. A plurality of the Court of Criminal Appeals agreed because the trial judge's comments "tainted the presumption of innocence." *Id*. The plurality reasoned, "A juror who hears the judge say that he would have preferred that the defendant plead guilty

22

might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing." *Id*.

As in *Unkart*, "[w]hat happened in the present case is a far cry from what happened in Blue." *Unkart*, 400 S.W.3d at 102. The trial court's remarks in this case could not have had any effect on the presumption of innocence, nor did they express an opinion about the case. Instead, the trial court's instructions addressed two other issues: how to proceed in light of an apparent deadlock, and what to do about potential juror misconduct. No provision of the trial court's *Allen* charge, whether read in isolation or in combination with any other provision, expressed an opinion about Calvo's guilt or innocence nor encouraged the jury to disregard either the defendant's presumption of innocence or the State's burden of proof. Nor did any provision of the trial court's pretrial instructions, including paragraph 8.

It was the jury foreperson, not the trial court, who first raised the question of jury misconduct, and none of the court's communications with the jury expressed an opinion on the issue of whether the juror in question was, in fact, guilty of misconduct. Specifically, the trial court never hinted that the juror in question was guilty of misconduct for questioning the sufficiency of the evidence to convict. Calvo complains that paragraph 8 instructed the jury that they would "need to answer specific questions" given to them by the court and that any juror who did not "follow

23

these instructions" would "be guilty of juror misconduct." But nothing in the pretrial instructions indicates "Not Guilty" was an unacceptable or disfavored answer. Nor does anything in the *Allen* charge, which urged the jury "to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury, if you can do so without doing violence to your conscience." Additionally, the jury charge included the following language regarding Calvo's presumption of innocence:

**Presumption of Innocence**

The Defendant is presumed innocent of the charge. All persons are presumed to be innocent, and no person may be convicted of an offense unless each element of the offense is proven beyond a reasonable doubt. The fact that a person has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial. The law does not require a Defendant to prove his or her innocence or produce any evidence at all. Unless the jurors are satisfied beyond a reasonable doubt of the Defendant's guilt after careful and impartial consideration of all the evidence in the case, the presumption of innocence alone is sufficient to acquit the Defendant.

Neither party objected to this language, and we must presume the jury followed the trial court's instructions. *Crenshaw v. State*, 378 S.W.3d 460, 467 (Tex. Crim. App. 2012) (a jury is presumed to have understood and followed the court's charge, absent evidence to the contrary); *see also Simon v. State,* 374 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd).

We conclude the trial court's instructions and communications did not taint Calvo's presumption of innocence or otherwise constitute fundamental error. Therefore, Calvo was required to object to the instructions at trial. *See Unkart*, 400

24

S.W.3d at 99; Tex. R. App. P. 33.1. Because he did not, the issue was not preserved for our review. We overrule Calvo's first issue.

## Issue Two – Juror Replacement

In his second issue, Calvo asserts the trial court erred when it removed the "holdout" juror from the jury. Calvo argues, "[T]he trial court erred by failing to sufficiently form a factual basis that the juror was unable to perform his duties and failed to correct the prior misrepresentation that the juror had committed any form of juror misconduct." The State argues Calvo did not properly preserve this complaint, in reply to which Calvo argues his motion for mistrial sufficed for this purpose. The State further asserts that the trial court acted within its discretion in replacing the juror with the alternate.

*Analysis*

To preserve error for review, a litigant must make a "timely request, objection, or motion" stating the grounds for the ruling sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from context, and the trial court must rule, expressly or impliedly, the withholding of which must be the subject of another objection. *See* Tex. R. App. P. 33.1(a)(1).

Although Calvo did not object at the moment the juror in question was replaced by the alternate juror, he had already moved for mistrial when the jury sent

25

the note about the juror's illness. This motion was denied. After receiving testimony from the juror in question, and while the court was considering how to proceed, Calvo's counsel requested that the court send the jury home for the night before making an assessment about whether the juror was disabled and unable to continue. We conclude Calvo's motion for mistrial—which was denied—combined with his request that the court refrain from replacing the juror until it had received additional evidence regarding the juror's ability to continue the following day—which was implicitly denied when the court replaced the juror—sufficiently preserved this issue for our review.

Texas Code of Criminal Procedure article 33.011 allows a district court to select up to four jurors to serve as alternates who "shall replace jurors who… become or are found to be unable or disqualified to perform their duties[.]" Tex. Code Crim. Proc. Ann. art. 33.011(a), (b). When a defendant asserts on appeal that a trial court erred in replacing a juror with an alternate, we review the trial court's decision for abuse of discretion. *Scales v. State*, 380 S.W.3d 780, 784 (Tex. Crim. App. 2012). The trial court, as sole factfinder and judge of the credibility of any testifying jurors, cannot replace a juror absent a finding that the juror was unable to continue, and such finding must be supported by the record. *Id*. We do not substitute our judgment for that of the trial court; we reverse only when the record, viewed in the light most favorable to the trial court's ruling, shows the ruling was arbitrary or unreasonable.

26

*Id*. "The ruling must be upheld if it is within the zone of reasonable disagreement." *Id*.

Here, the juror in question stated he suffered from a physical ailment which caused a stabbing pain in his back which he ranked as 10 on a scale of 1 to 10. Because he could only intake liquids, he had been unable to eat all day. Although he initially thought he would be able to endure the trial, the pain became too intense, and he had difficulty concentrating during deliberations. The trial court found the juror was disabled due to his physical condition, and this finding is supported by the record when viewed in the light most favorable to the finding. The trial court did not abuse its discretion, and its ruling was within the zone of reasonable disagreement. Calvo does not cite any authority for his bare assertion the trial court was required "to correct the prior misrepresentation that the juror had committed any form of juror misconduct[,]" nor do we find any. That said, Calvo never made any such request in the trial court, and that portion of his second issue is waived. *See* Tex. R. App. P. 33.1. We overrule Calvo's second issue.

## Issue Five - Cumulation of Errors

Finally, Calvo argues because of the errors asserted in his first four issues "the cumulative effect of the trial court's errors rendered his trial, specifically the guilt and innocence phase, fundamentally unfair." Calvo directs our attention to our sister court in *Linney v. State,* 401 S.W.3d 764, 782 (Tex. App.—Houston [14th Dist.]

27

2013, pet. ref'd), to support his argument. However, the Court of Criminal Appeals in *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) explained that while "[i]t is conceivable that a number of errors may be found harmful in their cumulative effect[,] . . . we are aware of no authority holding that non-errors may in their cumulative effect cause error." *Id*. (internal citation omitted). Because we have overruled Calvo's other issues on appeal, we overrule Calvo's final issue. *See id*.

## Conclusion

Having overruled Calvo's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on September 11, 2025
Opinion Delivered November 12, 2025
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.